## State of Vermont v. Ronald K. Sanguinetti

[449 A.2d 922]

No. 317-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed June 8, 1982

350

*W. Edson McKee,* Montpelier, for Plaintiff.

*Adams, Darby & Laundon,* Waterbury, for Defendant.

Barney, C.J. The defendant, owner of the Village Shoe Shoppe in Montpelier, was cited by the City of Montpelier in October, 1980, for violating Chapter 15, sections 514.4(2) and 514.6(1) of the Montpelier Zoning Ordinance, which bylaws prohibit projecting signs over the public right-of-way on that part of Main Street within the central business district, and provide that all nonconforming signs shall be removed within five years of November 6, 1973.

In 1970, with the permission of the City, the defendant had erected a projecting sign on the face of the building in which his business is located. The sign extends approximately five feet, of which one foot overhangs the public sidewalk. In 1973 the Zoning Ordinance containing the above bylaws was passed, and on July 14, 1980, the defendant was notified by the City that he was in violation of the Ordinance. He was

given 13 days to remove the offending sign and when he failed to do so was cited for the violation.

The defendant filed a motion to dismiss the prosecution in which he made three claims: (1) that the bylaws of the Ordinance are unconstitutional because they violate his rights to due process and equal protection; (2) that the bylaws are invalid because they conflict with the zoning enabling act at 24 V.S.A. Chapter 117, in effect when they were adopted in 1973; and (3) that the bylaws are invalid because they exceed the general regulatory power and authority of the municipality.

After hearing, the trial judge denied the defendant's motion on each of the grounds advanced, then granted his motion for permission to appeal pursuant to V.R.A.P. 5(b). We now consider the defendant's claims in the order they were raised.

 First, as to the constitutional arguments, we agree with the trial court that they are both without merit. The law is well settled that governments may exercise their regulatory power to institute zoning, without compensation to affected property owners, when the zoning reasonably relates to the public health, safety, morals or welfare, *Village of Euclid* v. *Ambler Realty Co.*, 272 U.S. 365 (1926); *City of Rutland* v. *Keiffer*, 124 Vt. 357, 359, 205 A.2d 400, 402 (1964). So long as the property owner retains some practical use of the property and the public benefit advanced by the regulation justifies the burden imposed, *Nectow* v. *City of Cambridge*, 277 U.S. 183 (1928); *Galanes* v. *Town of Brattleboro*, 136 Vt. 235, 240, 388 A.2d 406, 409 (1978), restrictions may even extend to reasonable regulation or prohibition of expansion or undue perpetuation of pre-existing, nonconforming uses and structures, *Vermont Brick & Block, Inc.* v. *Village of Essex Junction*, 135 Vt. 481, 482, 380 A.2d 67, 68 (1977); *City of Rutland* v. *Keiffer, supra*, 124 Vt. at 366–67, 205 A.2d at 406.

In other jurisdictions bans on the erection of signs which project over public areas have specifically been held not to violate constitutional rights. C. Rhyne, The Law of Local Government Operations § 26.93, at 918 (1980) (citing *City of Nampa* v. *Swayne*, 97 Idaho 530, 547 P.2d 1135 (1976); *Restaurants of Wichita, Inc.* v. *City of Wichita*, 215 Kan. 636, 527 P.2d 969 (1974); *Costopoulos* v. *Zoning Board of Adjust-*

eaf352

*ment,* 23 Pa. Commw. 159, 351 A.2d 318 (1976)). Municipalities have been allowed to limit the right to maintain such signs, and provisions requiring the amortization of pre-existing nonconforming signs, such as the bylaws at issue here, have been consistently upheld so long as a reasonable length of time is provided for the signs' removal. *Id.* at 919 (citing *Metromedia, Inc.* v. *City of San Diego,* 23 Cal. 3d 762, 592 P.2d 728, 154 Cal. Rptr. 212 (1979) (one to four years); *H. C. Williams Co.* v. *Town of Southampton,* 45 N.Y.2d 922, 383 N.E.2d 876, 411 N.Y.S.2d 230 (1978) (three years); *Town of Boothbay* v. *National Advertising Co.,* 347 A.2d 419 (Me. 1975) (ten months); *Art Neon Co.* v. *City and County of Denver,* 488 F.2d 118 (10th Cir. 1973), *cert. denied,* 417 U.S. 932 (1974) (five years)). We have no reason to depart here from these generally accepted rules.

We find we cannot agree, however, with the trial court's determination of the defendant's statutory claims. Initially the lower court agreed with the defendant that the bylaw requiring him to remove his nonconforming sign was in conflict with 24 V.S.A. § 4408(c) at the time it was enacted. That statute provided:

> Municipalities may also provide for the termination of non-conforming uses by specifying in a zoning regulation the period or periods in which non-conforming uses shall be required to cease and by providing formulae whereby such compulsory terminations may be fixed so as to allow for the conversion of such non-conforming uses, and for the amortization of investment. . . . Notwithstanding any of the foregoing, no non-conforming use may be required to terminate in less than three years from the date of the adoption of the applicable zoning regulations or amendment. *A non-complying structure may continue in perpetuity.* However, a by-law may provide that the extension or enlargement of the particular aspect or portion of that structure which is non-complying shall not be permitted. (Emphasis added.)

Thus, while nonconforming *uses* could be amortized out of existence over a period of time, nonconforming *structures* were entitled to remain.

"Non-complying structure" was then and is now defined at § 4408(a)(2) as "a structure . . . not in conformance with the zoning regulations . . . where such structure conformed to all applicable laws, ordinances and regulations prior to the enactment of such zoning regulations." There is no dispute that the defendant's sign was in prior conformance. "Structure" was and is in turn defined at § 4303(11) as "an assembly of materials for occupancy or use, including, but not limited to, a building, mobile home or trailer, billboard, *sign,* wall or fence . . . ." (emphasis added), certainly encompassing the defendant's projecting sign.

But the trial court went on to declare the bylaw valid and enforceable nonetheless, and offered three separate bases for its decision. These were first, the fact that § 4408(c) was repealed in 1980, second, the combined effect of a legislatively mandated general savings clause in the 1974 revised City Charter at Title XIV, Section 2, and a provision from an earlier 1955 version of that Charter, at Section 17, XXXVI, authorizing the municipality "to order and direct that signs . . . be . . . taken down," and third, 24 V.S.A. § 2291(7), which it felt to be independent authority for municipalities to adopt sign amortization provisions as a part of their zoning ordinance in spite of the existence of § 4408(c). We find none of these sufficient to save this prosecution.

█ The power of a municipality to accomplish zoning exists by virtue of authority delegated from the state, and may be exercised only in accordance with that delegation, subject to any terms and conditions imposed by the state. *Town of Waterford* v. *Pike Industries, Inc.,* 135 Vt. 193, 195, 373 A.2d 528, 530 (1977); *Thompson* v. *Smith,* 119 Vt. 488, 498, 129 A.2d 638, 645 (1957). Under Vermont law those terms and conditions are codified at 24 V.S.A. Chapter 117, and, when §§ 514.4(2) and 514.6(1) were adopted in 1973, they included the provision at § 4408(c).

█ Therefore, at the time it adopted its zoning bylaw providing for the eventual termination of pre-existing, nonconforming signs, the City of Montpelier was in contravention of state law allowing such signs to continue, and was acting beyond the scope of its authority under the enabling grant of power.

■ The fact that § 4408(c) was repealed by the legislature in 1980 has no effect on the bylaw's invalidity at the time of its adoption, 1 V.S.A. § 214(b). Nor does the general savings clause in the City Charter make a difference in the outcome of this case. While it is true that the City Charter gives the municipality an independent general authority to direct that signs be taken down if the public good so requires, the bylaw under which this defendant was prosecuted was not passed pursuant to that authority and cannot now, after its illegal enactment and enforcement, be brought under its umbrella.

The same argument holds true for the provision at 24 V.S.A. § 2291(7), which enumerates sixteen miscellaneous regulatory powers that inhere to municipal governments. That provision reads:

> For the purpose of promoting the public health, safety, welfare and convenience, a town, city or incorporated village shall have the following powers:
>
> . . . .
>
> (7) To regulate or prohibit the erection, size, structure, contents and location of signs, posters or displays on or above any public highway, sidewalk, lane or alleyway of the municipality and to regulate the use, size, structure, contents and location of signs on private buildings or structures.

While it may be that a bylaw identical to the one we strike today could be enacted pursuant to this regulatory authority, the bylaw under which this defendant was prosecuted was not. It was passed pursuant to a zoning enabling act which provides very specific procedures for the adoption of zoning bylaws by municipalities. 24 V.S.A. Chapter 117, Subchapter 6.

■ The citizens of Montpelier, whose property rights were affected by the bylaws they enacted pursuant to those procedures in 1973, were entitled to rely on those statutory procedures and on all of the other terms and conditions contained in the enabling act, including § 4408(c), when they voted to adopt them. Ordinances adopted under the City Char-

ter provision or 24 V.S.A. § 2291(7) must follow different procedures and pass different legal tests. The trial court's decision that either of these unrelated grants of authority might now provide an independent ground for this zoning bylaw's validity cannot be upheld.

*Judgment reversed.*