### In re Appeals of Phillip Letourneau

[726 A.2d 31]

No. 97-403

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed December 24, 1998

*Charles D. Hickey*, St. Johnsbury, for Appellant.

*Glenn C. Howland* of *McKee, Giuliani & Cleveland, P.C.*, Montpelier, for Appellee.

**Dooley, J.** Phillip Letourneau (landowner) appeals from a decision of the environmental court imposing a civil fine and awarding injunctive relief in connection with an addition he placed on his home in Derby without a zoning permit and in violation of applicable setback requirements. Landowner raises a variety of constitutional, statutory and evidentiary issues in challenging the determination, also taking the position that the town should be estopped from bringing this enforcement action and that the environmental court exceeded its jurisdiction in ordering the removal of the addition before any sale of landowner's home. We affirm.

Many of the trial court's findings are undisputed, and we summarize them here: The home in question is located on landowner's farm of approximately 184 acres on Holland Road in an area of Derby designated a "rural lands" district by the town's zoning ordinance. The building, and landowner's title to it, antedate the Derby zoning ordinance, enacted in 1977. The ordinance contains a 50-foot setback requirement for homes in this district. All but the rear four feet of the house are located within the setback zone from Holland Road. As of the time the zoning ordinance went into effect, the house included a roofed porch, six feet deep, along the front facing Holland Road and one side of the building. There was also a set of three steps leading to the porch.

In 1994, landowner's mother lived at his home during a period of convalescence and, because of her physical needs, occupied the living room. Anticipating that such a situation might recur, landowner decided in 1995 to expand the living room. To build onto the side of the house outside of the setback area was deemed expensive and inconvenient because it would have required the removal of a garage, woodshed and/or mud room. Landowner therefore decided to expand in the direction of the porch, which by then had become dilapidated.

A neighbor of landowner, Susan Judd, was in 1995 the chair of the Derby Planning Commission and had recently served as the town's zoning administrator. Prior to beginning construction on the living room expansion, landowner asked Judd if he needed a permit to tear down and rebuild his porch. He did not tell Judd that he intended to enlarge the enclosed living space of the house into the area occupied by the porch, nor did he tell her that his plan included expanding the building's footprint beyond that of the porch structure. According to the environmental court, Judd told landowner "that she did not anticipate a problem with his plans. She did not tell [landowner] that the project did or did not require a permit."

Based upon this discussion, landowner commenced construction. Judd said nothing further to landowner when she drove by his home and noticed he was removing the porch. In place of the porch, landowner constructed an L-shaped addition, 12 feet deep, extending 24 feet along the front of the house and 21 feet along one side. The trial court determined that this "increased the degree of nonconformity of the porch [with the setback requirement] by an additional six feet to the front and to the side (or an additional three feet in the area formerly occupied by the front steps[)]." After landowner had made substantial progress on this addition, Judd stopped by the house, told landowner he needed a zoning permit, helped him fill out an application and told him to see the town's zoning administrator. The zoning administrator denied the application based on noncompliance with the 50-foot setback requirement and advised landowner to seek a variance. While the application process was ongoing, landowner completed work on the addition.

Following a public hearing, the town's zoning board of adjustment denied the variance request on December 15, 1995 and, thereafter, the administrator sent landowner a formal notice of zoning violation. At this point, judicial proceedings began with landowner filing a declaratory judgment action in the superior court seeking a determination that the setback requirement in the zoning ordinance is unconstitutional. Landowner appealed the zoning violation notice to the board of adjustment, which affirmed the administrator's decision on January 4, 1996. Landowner then appealed both the board of adjustment's variance decision and its determination as to the zoning violation to the environmental court. Finally, the town in March 1996 filed an enforcement action in the environmental court seeking the imposition of civil fines and a permanent injunction requiring landowner to

remove the addition to his home. These four separate proceedings were ultimately consolidated before the environmental judge.[1]

Landowner requested a jury trial on the enforcement action, but the environmental court denied the motion, and an attempt to obtain interlocutory review of this decision was unsuccessful. The trial court thereafter conducted an evidentiary hearing on the variance matter and, on October 3, 1996, entered an order reaching the same determination as the board of adjustment. The court then heard evidence on the remaining three matters and on June 19, 1997 issued an opinion rejecting landowner's constitutional claim and determining that he had violated the zoning ordinance by building the addition. On August 22, 1997, the environmental court entered its final judgment (a) assessing a civil fine of $3,090, amounting to $10 per day for 309 days, and (b) ordering landowner, or, if applicable, his heirs and assigns, to remove the addition and to restore the house to its previous footprint prior to any transfer of interest in the property.

On appeal, landowner raises seven issues, contending that: (1) the setback requirement of the zoning ordinance is unconstitutional because it is not reasonably related to public health, safety, morals and general welfare; (2) there is no prohibition in the zoning ordinance or statute against the expansion of a noncomplying structure; (3) the town should be estopped from enforcing the zoning ordinance; (4) the town is guilty of selective enforcement of its zoning ordinance; (5) the injunction was improper; (6) landowner was entitled to a jury trial; and (7) the environmental court improperly excluded evidence of the town's violation of state building requirements. We take these claims in order.

■ First, landowner challenges the constitutionality of the setback requirement in the zoning ordinance, arguing that the town has not made a sufficient showing of relationship of the setback requirement to the public good. Zoning requirements are constitutional if there remains for the landowner "some practical use of his land, and the existence of a public good or benefit of sufficient magnitude to justify the burdening of the affected property." *Galanes v. Town of Brattleboro*, 136 Vt. 235, 240, 388 A.2d 406, 409 (1978). The zoning regulation must be reasonably related "to public health, safety, morals or general welfare." *Id.* at 240, 388 A.2d at 410; see also *State*

---

[1] The administrative judge assigned the environmental judge to Orleans Superior Court to hear the declaratory judgment action. All other matters were in the environmental court.

*v. Sanguinetti*, 141 Vt. 349, 351, 449 A.2d 922, 924 (1982) (same). It is not, of course, our role to choose a regulatory approach among the many that might be reasonable. Thus, "Courts will not interfere with zoning unless it clearly and beyond dispute is unreasonable, irrational, arbitrary or discriminatory," *City of Rutland v. Keiffer*, 124 Vt. 357, 367, 205 A.2d 400, 407 (1964), and zoning ordinances are presumed valid. See *McLaughry v. Town of Norwich*, 140 Vt. 49, 54, 433 A.2d 319, 322 (1981).

The United States Supreme Court long ago determined that as a general proposition setback requirements are valid as reasonably related to the public health, safety and welfare. See *Gorieb v. Fox*, 274 U.S. 603, 608-10 (1927). Numerous general purposes of zoning regulation are promoted by setback regulation. See 24 V.S.A. § 4302(a) (goals of zoning including "access to adequate light and air," avoiding "overcrowding of land and buildings," and protection against traffic congestion and "the invasion of through traffic"). For example, requiring that buildings be set back from a highway protects sight lines for automobiles and ensures emergency access to the buildings for fire protection purposes without blocking the highway.

■ Although there are justifications for setback regulation generally, landowner argues that there is no justification for applying setback restrictions to him because the environmental court found:

> [T]he addition as built does not alter the essential character of the neighborhood, does not impair the appropriate use or development of adjacent property, does not reduce access to renewable energy resources, and is not detrimental to the public welfare.

We agree with landowner that the leading case of *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388 (1926), demands that we focus not on the "abstract" but on the challenged zoning requirement "in connection with the circumstances and the locality." We do not agree, however, that the municipality must specially prove that the public safety and welfare is advanced by application of the zoning regulation to the land in issue here, and that we must scrutinize the zoning ordinance on a parcel-by-parcel basis. The setback restriction is part of a regulatory scheme that allows for variances in appropriate circumstances — some of which were the reason for the environmental court's finding quoted above. See 24 V.S.A. § 4468(a)(4) (requiring a variance if it, inter alia, "will not alter the essential character of the neighborhood or district in which the property is located, substan-

tially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare"). It is reasonable for the town to apply uniform setback requirements within a zoning district to avoid arbitrary or discriminatory requirements. The setback requirement withstands constitutional scrutiny in this case.

Landowner next contends that the trial court should have dismissed the enforcement action because neither the applicable zoning ordinance nor its enabling legislation prohibit the expansion of a noncomplying structure in the setback area. Much of this argument is based on a 1980 repeal of 24 V.S.A. § 4408(c), part of the Vermont Planning and Development Act. Section 4408(a)(2) defines a "[n]oncomplying structure" as "a structure or part thereof not in conformance with the zoning regulations covering building bulk, dimensions, height, area, yards, density or off-street parking or loading requirements, where such structure conformed to all applicable laws, ordinances and regulations prior to the enactment of such zoning regulations." The section further defines a "[n]onconforming use" as "a use of land or a structure which does not comply with all zoning regulations where such use conformed to all applicable laws, ordinances and regulations prior to the enactment of such regulations." 24 V.S.A. § 4408(a)(1). Landowner points out that prior to 1980 § 4408(c) of the Act contained the following language:

> Municipalities may . . . provide for the termination of non-conforming uses by specifying in a zoning regulation the period or periods in which non-conforming uses shall be required to cease and by providing formulae whereby such compulsory terminations may be fixed so as to allow for the conversion of such non-conforming uses, and for the amortization of investment. . . . A non-complying structure may continue in perpetuity. However, a by-law may provide that the extension or enlargement of the particular aspect or portion of that structure which is non-complying shall not be permitted.

1967, No. 334 (Adj. Sess.), § 1, formerly codified as 24 V.S.A. § 4408(c), repealed 1979, No. 174 (Adj. Sess.), § 18. Landowner's statutory argument is that, because his house was a nonconforming structure prior to his nonpermitted construction project, the repeal of the last sentence of former subsection (c) means that the town may not prohibit "the extension or enlargement of the particular aspect or portion of that structure which is non-complying."

As enacted in 1968, the principal purpose of § 4408(c) was to allow municipalities to provide for the phase-out of nonconforming uses by setting a time period by which a use must be terminated. The statute did not, however, allow for the phase-out of noncomplying structures. See *Sanguinetti*, 141 Vt. at 352, 449 A.2d at 924 (summarizing former § 4408(c) as stating that, "while nonconforming *uses* could be amortized out of existence over a period of time, nonconforming *structures* were entitled to remain") (emphasis in original). These structures could exist in perpetuity, but the municipality could prohibit the enlargement of the noncomplying aspect or portion of the structure. By repealing § 4408(c), the Legislature was removing the authorization to phase out nonconforming uses. See 1979, No. 174 (Adj. Sess.), § 18 ("24 V.S.A. § 4408(c), relating to termination of non-conforming uses, is repealed.").

Rather than eliminating the authorization to prohibit enlargement of noncomplying structures, the repeal of § 4408(c) brought noncomplying structures and nonconforming uses under the same regulatory regime. This occurred because the Planning and Development Act defined a noncomplying structure as a nonconforming use. See 24 V.S.A. § 4408(a)(1) (definition of nonconforming use includes a structure "which does not comply with all zoning regulations"); *In re Stowe Club Highlands*, 164 Vt. 272, 278, 668 A.2d 1271, 1276 (1995) ("[t]he statute defines a noncomplying structure as a nonconforming use"). That common regime allows municipalities to "regulate and prohibit expansion and undue perpetuation of nonconforming uses" and to control "enlargement of a structure containing a nonconforming use." 24 V.S.A. §§ 4408(b), 4408(b)(4). While zoning ordinances enacted under the authority granted by the Act can and do distinguish between nonconforming uses and noncomplying structures, see *Stowe Club Highlands*, 164 Vt. at 278-79, 668 A.2d at 1276, the distinction is no longer relevant to the ability of a municipality to prevent expansion of the use or structure.

 Landowner also argues that the zoning ordinance does not allow the town to prohibit expansion of a noncomplying structure because the prohibition on expansion relates to a "non-conforming structure." Like the Act, the ordinance distinguishes noncomplying structures from other nonconforming uses. Section 302 of the ordinance begins with an underlined reference to "[n]on-complying structures," defined in a manner that tracks the language of 24 V.S.A. § 4408(a)(2), and goes on to state in relevant part that "[a]ny

non-conforming structure . . . [s]hall not be moved, enlarged, altered or extended in any manner that would make the non-conforming structure more non-conforming." We believe that the switch between the terms "non-complying structure" and "non-conforming structure" represents a drafting imprecision, but not a change of meaning. Landowner's argument to the contrary would leave the defined term "non-complying structure" without use in the regulatory language, and the term used to define the regulatory policy, "non-conforming structure," without a definition. Because it is obvious the intent of this provision is to provide for the regulation of noncomplying structures, the reference to a "non-conforming structure" is the sort of clerical error that a court construing the ordinance should disregard. See *In re C.S.*, 158 Vt. 339, 343, 609 A.2d 641, 643 (1992) (eschewing "literal interpretation" of enactment in face of "clerical error in transcription, writing, or redrafting"). Thus, we cannot agree with landowner that the ordinance is either invalid or fails to prohibit the expansion of noncomplying structures.

Landowner's third contention on appeal is that the trial court should have concluded that the town is estopped from pursuing any enforcement action against him concerning violation of the setback rule because of the actions of his neighbor, Susan Judd, who was chair of the town planning commission. Under Vermont law, a party seeking to invoke the doctrine of equitable estoppel must establish four elements:

> (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted upon, or the conduct must be such that the party asserting estoppel has a right to believe it is intended to be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must detrimentally rely on the conduct of the party to be estopped.

*Agency of Natural Resources v. Godnik*, 162 Vt. 588, 592, 652 A.2d 988, 991 (1994). Estoppel, which is "based upon the grounds of public policy, fair dealing, good faith, and justice," is rarely invoked against the government; that result "is appropriate only when the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case." *Id.* at 592-93, 652 A.2d at 991. The trial court determined that, in Derby, "[a] zoning

permit is required for any structural alteration or enlargement of a building" regardless of any setback issues. We agree with landowner that this is a "fact" for purposes of the estoppel elements enumerated above. We can further assume arguendo that Judd knew this fact, that landowner was ignorant of it, and that Judd's status as chair of the planning board was such that representations made by her would be sufficient to bind the town in these circumstances. See *My Sister's Place v. City of Burlington*, 139 Vt. 602, 609, 433 A.2d 275, 279 (1981) (government can be estopped by acts of agent within his or her authority).

■ We nevertheless agree with the trial court that this is not one of those rare situations in which it is appropriate to estop a governmental entity. "[C]onsistent with the requirement of good faith, estoppel will not be invoked in favor of a party whose own omissions or inadvertence contributed to the problem." *Godnik*, 162 Vt. at 593, 652 A.2d at 991 (citation and internal quotation marks omitted); see also *In re Barlow*, 160 Vt. 513, 523-24, 631 A.2d 853, 859-60 (1993) (estoppel against government agency inappropriate where it "had an incomplete knowledge of the relevant facts"). Landowner's failure to disclose to Judd that he intended to expand his house further into the setback zone did not merely contribute to the problem — it *is* the problem around which this case revolves. We do not assume that the town would simply have overlooked the possibly less significant zoning transgression of remodeling without a permit if it did not involve enlarging a noncomplying structure. Nevertheless, it would be inconsistent with the relevant considerations of public policy, good faith, fair dealing and justice to estop a governmental entity in connection with inferences drawn by one of its officials based on a disclosure to her that was lacking the critical facts to evaluate the proposed land development. We conclude that landowner has failed to demonstrate the first element of the test and that the town is not estopped from enforcing the setback requirement against landowner.

Landowner's fourth contention on appeal is that the town has violated his right to equal protection of the laws by engaging in discriminatory enforcement of the zoning ordinance. His theory is twofold. First he argues that the evidence he submitted of nonenforcement of the setback restrictions against other landowners required the court to determine he was the victim of discriminatory enforcement even without a finding of improper motive. Second he argues that if improper motive was required, he demonstrated that town officials acted in retaliation against a sign on his property.

■ Landowner's theory is based upon the leading case of *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886): "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." In the context before us, the *Yick Wo* standard requires the landowner to show more than that the municipality has failed to enforce the zoning ordinance in similar circumstances. See *Greenawalt v. Zoning Bd. Of Adjustment*, 345 N.W.2d 537, 546 (Iowa 1984) ("mere laxity of enforcement or some exercise of selective enforcement does not in itself establish a constitutional violation"); *People v. Goodman*, 290 N.E.2d 139, 143 (N.Y. 1972) (one who alleges discriminatory enforcement must meet the heavy burden of showing conscious, intentional discrimination or a consciously practiced pattern of discrimination). Thus, the landowner must meet a two-part test:

> "(1) the person, compared with others similarly situated, was selectively treated; and
> (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996) (quoting *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)).

Landowner argues that the two-part test should not be employed because the zoning administrator does not have the discretion to refuse to enforce the zoning ordinance. He presented evidence that other setback violations in the town were ignored or were authorized by issuance of permits that were inconsistent with the ordinance. He argues that this evidence should have been sufficient to demonstrate violation of his right to equal protection of the laws.

Although a zoning administrator must enforce the zoning ordinance, the nature of the remedy sought is discretionary. See *Richardson v. City of Rutland*, 164 Vt. 422, 425, 671 A.2d 1245, 1248 (1995). Thus, we disagree with the premise of landowner's argument.

In any event, we are unwilling to rely on variations in standards for issuing permits or differences in enforcement approaches to find unconstitutional discrimination. Mistakes and inadequacies will inevitably occur in the process of zoning administration. When they do, these irregularities do not have the effect of leaving the municipality without an ability to enforce its zoning ordinance against anyone.

Thus, landowner must meet the second part of the two-part test. He argues he did so through evidence adduced at trial concerning a large sign on his garage that emphatically enjoins state police, fish and game wardens, border patrol officers and customs agents to stay off his property, warning: "Posted to All State Officials . . . Don't Beware of the Dog . . . Beware of Owner." According to landowner, there was evidence at trial that a former customs officer "was one of the proponents of the enforcement action," and he is therefore entitled to a determination that the town retaliated against his expression of hostility to customs officers and other government officials.

■ The trial court determined that it "cannot find that any action of any Town official was taken based on the contents of the sign which [landowner] maintains on his property, and therefore cannot find that any impermissible discriminatory enforcement has occurred in this case." This is a factual finding which we must uphold unless, viewing the evidence in the light most favorable to the prevailing party and disregarding any modifying evidence, the finding is clearly erroneous. See *Bianchi v. Lorenz*, 166 Vt. 555, 562, 701 A.2d 1037, 1041 (1997). Landowner provides no basis for us to determine that this key factual finding, the lack of a causal link between the sign and the initiation of enforcement proceedings, is erroneous, much less clearly so. Since there is no finding of impermissible purpose, and no showing of malicious or bad faith intent to injure, landowner has failed to make out a case of unlawful discrimination.

Landowner's fifth contention is that the court should not have issued the mandatory injunction. Landowner agrees that the standard the town must meet to obtain this relief is set out in *Town of Sherburne v. Carpenter*, 155 Vt. 126, 582 A.2d 145 (1990). We held in *Carpenter*, and have subsequently reiterated, that "[i]f the zoning violation is substantial and involves conscious wrongdoing, the [municipality] is entitled to an injunction, including a mandatory injunction to remove an offending structure, as a matter of course." *Fenwick*

*v. City of Burlington*, 167 Vt. 425, 435, 708 A.2d 561, 566-67 (1997) (stressing that no balancing of equities is required and citing *Carpenter*, 155 Vt. at 131-32, 582 A.2d at 149). Landowner contends that any violation here was neither substantial nor the result of conscious wrongdoing.

The trial court found to the contrary. Specifically, the court determined that the violation was substantial because "[t]he addition was twice the depth into the setback of the existing noncomplying porch." On the issue of conscious wrongdoing, the court accepted the proposition that a project within the confines of the existing porch would not have met the standard, given landowner's interactions with Judd. It found, however, that what landowner actually built went "well beyond" the intention he expressed to Judd and ruled, therefore, that the wrongdoing was conscious.

We have not previously clarified what standard of review applies to the determination required by *Carpenter*. See *Fenwick*, 167 Vt. at 435, 708 A.2d at 567. Landowner contends that our review here should be de novo. The town does not explicitly address the question.

De novo review is not appropriate in these circumstances. As noted above, our review of factual findings is very limited. Our *Carpenter* opinion implicitly refers to the relevant determinations as findings of fact rather than conclusions of law. See *Carpenter*, 155 Vt. at 131-32, 582 A.2d at 149 ("once the court finds that a violation is insubstantial, further balancing of injury and cost is generally inappropriate"; trial court "made no findings" as to whether "factors that would allow denial of the injunction were present in this case" and, on remand, court "could find" that encroachment into setback zone insubstantial). Elsewhere in the opinion, we noted that the whole question of substantiality is relevant because in cases of insubstantial violations an injunction directing removal would be "unjust and inequitable," *id.* at 131, 582 A.2d at 149, a determination that is inherently discretionary. In *Fenwick*, 167 Vt. at 432, 708 A.2d at 565, we noted the "wide discretion, reviewable here only for abuse" enjoyed by the trial court in determining whether the equities favor a mandatory injunction as sought by an intervenor rather than a municipality. See also *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 528, 711 A.2d 1163, 1171 (1998) (amount of civil penalty for zoning violation reviewed only for abuse of discretion). It would be incongruous and illogical to apply a nondeferential standard of review when the party seeking the injunc-

tion is a municipality and the issues have therefore narrowed to the extent of the violation and whether there was conscious wrongdoing.

■ Whether the task is viewed as an exercise of discretion or the finding of fact, the trial court acted within its authority in determining that the violation was substantial and that landowner committed it consciously. A six-foot incursion into the setback zone is fully three times more significant than the two-foot extension that our opinion in *Carpenter* suggested was potentially, but not necessarily, insubstantial. See *Carpenter*, 155 Vt. at 132, 582 A.2d at 149. On the issue of willfulness, given landowner's preconstruction conversation about permitting requirements with Judd, a reasonable factfinder might have viewed the evidence differently, but the trial court was not compelled to do so. We have no basis for disturbing the trial court's decision to award injunctive relief.

Finally, landowner raises procedural issues about the trial of the cases. His main argument is that the environmental court erred in refusing his request for a jury trial. He relies not on a right to trial by jury established in a statute or constitutional provision, but rather on the Equal Protection Clause of the 14th Amendment. Specifically, he invokes *Lindsey v. Normet*, 405 U.S. 56, 77 (1972), in which the Supreme Court determined that a state violates the Equal Protection Clause when it grants a right of appeal to some litigants while "capriciously or arbitrarily" denying the same right to others. See also *Humphrey v. Cady*, 405 U.S. 504, 508-13 (1972) (discussing similar equal protection implications of denying jury trials to some, but not all, similarly situated litigants).

As landowner points out, the Legislature has created two distinct avenues a municipality may use to seek judicial enforcement of zoning ordinances. One alternative is the avenue pursued here — a full-blown civil action pursuant to chapter 117 of Title 24. See 24 V.S.A. §§ 4444, 4445; see also 4 V.S.A. § 1001(b) (vesting jurisdiction over zoning actions in environmental court). This alternative does not include a right to trial by jury. The second alternative, which envisions a more informal decision-making process at least in its initial phase, involves bringing the enforcement action as a "civil ordinance violation" in the judicial bureau. See 4 V.S.A. § 1102(b)(2); 24 V.S.A. § 1974a(b), (d). This proceeding places the parties in the first instance before a hearing officer of the judicial bureau, with the district court serving as an appellate tribunal. See 4 V.S.A. §§ 1106-1107. Such

appeals are de novo, with the defendant enjoying the right to trial by jury. See *id.* § 1107(a).[2]

Relying on *Lindsey* and *Humphrey*, landowner argues that he is denied equal protection of the laws by a system that gives the municipality unfettered discretion to determine whether he may have a jury trial. Absent a suspect classification or a violation of a fundamental right, a legislative classification does not deny equal protection of the laws if it is rationally related to a legitimate public purpose. See *Hodgman v. Jard Co.*, 157 Vt. 461, 464, 599 A.2d 1371, 1373 (1991). Unless the nature of the underlying action warrants such treatment, classifications in determining the right to trial by jury do not involve a fundamental right. See *Jackson Water Works, Inc. v. Public Utils. Comm'n*, 793 F.2d 1090, 1096 (9th Cir. 1986); *Reed v. Brunson*, 527 So. 2d 102, 118 n.10 (Ala. 1988); *Wilson v. Cohen*, 610 A.2d 1177, 1184 (Conn. 1992); *Rudolph v. Massachusetts Bay Ins. Co.*, 472 So. 2d 901, 905 (La. 1985). Zoning enforcement is not the type of case to implicate a fundamental right. See *Smith v. Town of St. Johnsbury*, 150 Vt. 351, 357, 554 A.2d 233, 238 (1988) (no fundamental right involved for procedures in amending zoning ordinance).

In determining whether there is a rational basis for the distinctions drawn here, we must look more closely at the statutory schemes. The Legislature has explicitly provided that, "[i]f the penalty for all continuing civil ordinance violations is greater than $500.00, or injunctive relief, other [than an order that the violation cease], is sought, the action shall be brought in superior court."[3] 24 V.S.A. § 1974a(b). This case, involving penalties well in excess of $500 and a request for an injunction beyond a mere order to stop violating the ordinance, is within this provision. The town could seek full relief only

---

[2] The judicial bureau was actually established after the environmental court's decision in this case. See 1997, No. 121 (Adj. Sess.), § 4. A similar regime in the traffic and municipal ordinance bureau, identical in all material respects to the present one, was applicable at the times relevant to the instant case. See 1993, No. 237 (Adj. Sess.), §§ 1-5 (providing for proceedings before "traffic and municipal ordinance bureau").

We further note that under both regimes the Legislature provided for procedural trade-offs. Defendants before the judicial bureau (as with its predecessor, the traffic and municipal ordinance bureau) may obtain a de novo jury trial as a form of appellate review, but further appeals to this Court are discretionary only. See 4 V.S.A. § 1107(c); 1993, No. 237 (Adj. Sess.), § 5. We need not discuss the question of whether, for purposes of equal protection, the nondiscretionary appeal that lies from the environmental court offsets the lack of jury trial rights in zoning cases before that tribunal. See *Lindsey*, 405 U.S. at 77 ("When an appeal is afforded . . . it cannot be granted to some litigants and capriciously or arbitrarily denied to others . . . .").

[3] Superior court jurisdiction over zoning matters is now vested in the environmental court. See 4 V.S.A. § 1001(b).

by choosing the enforcement route that did not involve the appellate right to a trial by jury.

■ There are a number of legitimate reasons for the procedural classifications the Legislature has created. The nature of the relief involved corresponds to the line between legal and equitable actions, upon which the right to trial by jury has often turned. See *Maddalone v. C.D.C., Inc.*, 765 P.2d 1047, 1049 (Colo. Ct. App. 1988). Further, the Legislature could decide that equitable actions require speedy relief that cannot wait for a jury trial after a violation determination by a judicial officer. See *Wilson*, 610 A.2d at 1184. The specialized jurisdiction of the environmental court over zoning matters is a legislative determination that these matters warrant special expertise. The Legislature can decide that application of this expertise is necessary in enforcement cases involving substantial penalties. Because there are rational bases of the legislative classifications, we conclude there is no denial of equal protection of the laws.

Landowner's last argument is that the trial court erred when it refused to admit, and rely upon, evidence of the town's failure to obtain certain wastewater permits in connection with a building that had recently been constructed by the municipality. Analogizing to V.R.Cr.P. 32(c)(4), which permits a criminal defendant to present evidence at sentencing, landowner maintains that the evidence at issue was relevant because it relates to mitigating circumstances that might have led to a more lenient disposition. Even under a broad standard of relevancy, see V.R.E. 401, we fail to see how this evidence is relevant.

■ In any event, the trial court has broad discretion to exclude marginally relevant evidence that is remote, tends to confuse the issues or causes a waste of time. See V.R.E. 403; *LaBrie v. Phillips*, 150 Vt. 652, 653, 553 A.2d 149, 150 (1988) (mem.); *Contractor's Crane Serv., Inc. v. Vermont Whey Abatement Auth.*, 147 Vt. 441, 450, 519 A.2d 1166, 1173 (1986). This evidence threatened to create a side show over whether the town had properly obtained a permit on an unrelated project. Even if admitted, the environmental judge could give it no weight, and her evidentiary ruling necessarily involved this determination of its weight. We find no error in its exclusion.

*Affirmed.*