STATE OF VERMONT
ENVIRONMENTAL COURT

Secretary, Vermont Agency of Natural Resources,    }
    Plaintiff,    }
        }
        }
            v.    }    Docket No. 41-2-02 Vtec
        }    (Stage II Vapor Recovery)
Mountain Valley Marketing, Inc.,    }
    Respondent.    }

Secretary, Vermont Agency of Natural Resources,    }
    Plaintiff,    }
        }
            v.    }    Docket No. 278-12-02 Vtec
        }    (Stage II Vapor Recovery)
Premium Petroleum, Inc.,    }
    Respondent.    }

Secretary, Vermont Agency of Natural Resources,    }
    Plaintiff,    }
        }
            v.    }    Docket No. 176-8-02 Vtec
        }    (Stage I Vapor Recovery)
Premium Petroleum, Inc., Odessa Corp.,    }
Timberlake Associates, and Wesco, Inc.,    }
    Respondents.    }

Secretary, Vermont Agency of Natural Resources,    }
    Plaintiff,    }
        }
            v.    }    Docket No. 175-8-02 Vtec
        }    (Hazardous Waste
Premium Petroleum, Inc., Odessa Corp.,    }        Management
Regulations)    Timberlake Associates, and
Wesco, Inc.,    }
    Respondents.    }

## Decision and Order on Pending Motions

In Docket No. 41-2-02 Vtec, the Secretary of the Vermont Agency of Natural Resources ("ANR' or "the Agency") issued an administrative order on January 24, 2002, pursuant to 10 V.S.A. §8008, regarding Respondent Mountain Valley Marketing, Inc., which timely requested a hearing in Environmental Court. This administrative order alleged violations of the Air Pollution Control Regulations regarding Stage II Vapor Recovery. In

1

Docket No. 278-12-02 Vtec, the Secretary of the Agency issued an administrative order on November 26, 2002, pursuant to 10 V.S.A. §8008, also alleging violations of the Stage II Vapor Recovery Regulations regarding Respondent Premium Petroleum, Inc., which also timely requested a hearing in Environmental Court.

In Docket No. 176-8-02 Vtec, the Secretary of the Agency issued an administrative order on July 31, 2002, pursuant to 10 V.S.A. §8008, regarding Respondents Premium Petroleum, Inc., Odessa Corp., Timberlake Associates, and Wesco, Inc., which timely requested a hearing in Environmental Court. This administrative order alleged violations of the Air Pollution Control Regulations regarding Stage I Vapor Recovery.

In Docket No. 175-8-02 Vtec, the Secretary of the Agency issued an administrative order on July 31, 2002, pursuant to 10 V.S.A. §8008, regarding Respondents Premium Petroleum, Inc., Odessa Corp., Timberlake Associates, and Wesco, Inc., which timely requested a hearing in Environmental Court. This administrative order alleged violations of the Hazardous Waste Management Regulations regarding exempt and small-quantity generators of hazardous waste.

In all the above-captioned cases, Respondents (which are all related corporations or entities) are represented by Jon Anderson, Esq. and William E. Simendinger, Esq.; and the Agency of Natural Resources is represented by Mark J. Di Stefano, Esq. and Catherine J. Gjessing, Esq.

On July 7, 2003, the Court issued three decisions in the above-captioned cases, including rulings granting and regulating disclosure of certain information Respondents had requested from the Agency. Respondents filed a motion seeking sanctions, including contempt and attorneys' fees, against the Agency for allegedly failing to comply with the July 7, 2003 order regarding discovery, while the Agency filed a motion for reconsideration of the order. Other litigation in superior court under Vermont's Access to Public Records law resulted in a decision that was appealed to the Vermont Supreme Court in Wesco, Inc. v. Sorrell, Docket No. 2003-334 and Wesco, Inc. v. Johnstone, Docket No. 2003-337. On October 8, 2004, the Vermont Supreme Court upheld the superior court's denial of appellants' public records requests on the basis that the documents were relevant to ongoing litigation in district court and in the above-captioned environmental court administrative order cases. In its decision, 2004 VT 102, ¶¶16, 18, 22 and 23 (October 8,

2

2004), the Supreme Court emphasized that courts have inherent power to control discovery in litigation pending before them, that discovery rulings may be revisited and altered by the trial court as the litigation unfolds, that the Access to Public Records statute should not be used to enlarge discovery beyond what would be available in the litigation, and that access is only delayed until after the termination of the litigation.

Respondents had sought discovery of information from the ANR Enforcement Division, in aid of their argument that they have been unconstitutionally singled out for enforcement. As explained in the July 7, 2003 orders, to succeed in an argument of selective enforcement, particularly in a civil case, Respondents must satisfy both prongs of the two-part test described in In re Appeal of Letourneau, 168 Vt. 539, 549 (1998, as corrected 1999). The first prong is that 'the person, compared with others similarly situated, was selectively treated;' the second is that the 'selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' Respondents sought discovery regarding both prongs of this test for selective enforcement: both to obtain information on the Agency's treatment of other regulated entities, and to obtain information going to the motivation of the Agency and its personnel in this particular instance.

In its July 7, 2003 discovery order, this Court granted Respondents' motion to compel only in part, regulating discovery in stages to minimize its imposition on the work of the Agency and its enforcement division. The Court ruled that Respondents are entitled to discovery on the first prong of the selective enforcement test, allowing discovery of the subset of "materials generated in connection with orders, assurances of discontinuance, or court proceedings under 10 V.S.A. Chapter 201 as of or after November 2, 1990" that fall within the classification of public records and would be available under Vermont's Access to Public Records law absent the pendency of this litigation. This Court reasoned that, under 4 V.S.A. § 1004(a), the requested information relating to the first prong was "necessary to a full and fair determination of these proceedings" in connection with Respondents' effort to defend against the administrative order proceedings by asserting a selective enforcement defense.

In that order, this Court postponed Respondents' motion to compel the disclosure of

3

information going to the second prong of the selective enforcement test, relating to the motivation of the Agency and its personnel, until and unless Respondents have reviewed the information relating to the first prong and are able to make out a prima facie case to the Court that there were other entities that both were similarly situated and were treated differently. In an August 11, 2003 order on the Agency's first motion for reconsideration, the Court reiterated that the July 7, 2003 discovery order had only "granted in part the requested information about the Agency's treatment of other regulated entities, to enable Respondents to determine under the first prong of the test for selective enforcement whether others are similarly situated," and that it had not ordered the production of settlement discussions or privileged investigative material.

It is especially important to note that this Court has not yet ruled on whether Respondents are able to meet either prong of the two-part test for selective enforcement. All that the July 7, 2003 discovery order (as clarified by the August 11, 2003 order) accomplishes is to allow Respondents to obtain, with respect to the first prong only, the otherwise-public information they need to determine whether they are able to make a threshold showing under the first prong of the two-part selective enforcement test.

The Agency is correct that discovery should be limited if it is determined that the discovery sought is obtainable from some source that is more convenient, less burdensome, or less expensive, see V.R.C.P. 26(b)(1)(i). As Respondents can obtain most of the information sought from the Court's records, they must first examine the Court's records for materials generated in connection with administrative orders, assurances of discontinuance, or court proceedings under 10 V.S.A. § Chapter 201 as of or after November 2, 1990. That first stage of the allowed discovery does not burden the Agency at all; nor is it unduly burdensome to Respondents (although some of the older material is located at the Public Records storage facility). Rather, Respondents can obtain the docket sheets for all these cases from the Court, can look through the files at both locations, and can determine whether they involve 'similarly situated' entities by whatever test of similarity Respondents wish to employ. The Court has made no ruling on what categories of similarity are appropriate, and Respondents have suggested none other than 'similarly situated gas station operators.'

Only those administrative orders for which no request for hearing was filed will be

4

unavailable through that method. The Agency should provide Respondents on request with a list of final administrative orders for which no Environmental Court hearing has been requested; this information should be available in information underlying the annual reports required to be filed by the Agency under 10 V.S.A. §8017.

Respondents argue that the information available in the Court's files is inadequate for them to establish the first prong of their selective enforcement argument. We cannot find that it is inadequate on its face. Rather, the process established by the Court to regulate discovery in this case is a process that must take place in stages. Respondents must extract all the useful information from the Court's files before the Court will conduct any in camera review to rule on any specific requests for Agency file material. There must be a finite number of gasoline stations in Vermont, some subset of which is neither owned nor operated by Respondents. Once that subset is identified, the determination of whether they are similarly situated and how enforcement matters regarding them have been handled by the Agency will be a much narrower task than it may be at present.

This does not mean that Respondents necessarily will be denied access to information in the ANR Enforcement Division's files. Rather, after obtaining and reviewing the information available in the Court's files, Respondents may seek additional discovery for any additional information (on the first prong only) they need to determine if they can make out a prima facie case that there were other entities that were similarly situated and were treated differently. The Court does not now require any discovery directly from the Agency even on the first prong (other than the list of final administrative orders not brought into court); it is simply premature to do so. Consequently, Respondents' motions for sanctions are also premature.

Once Respondents have examined all the information relating to the first prong, if they decide to proceed with more discovery on selective enforcement rather than simply proceeding with the administrative order cases[1], they will then have to make the threshold

---

[1] We remind the parties that the issue of whether there was a violation and, if so, what is an appropriate penalty, is de novo before the Court. The Court may impose a different penalty amount from the amount imposed by the Agency in its initial administrative order or the amount sought by the Agency in the court proceedings. If Respondents' selective enforcement argument is simply that the amount sought is inappropriately high, they may wish to make that argument in the context of the 10

showing that others were 'similarly situated' yet treated differently, before they may even seek discovery on the second prong, related to motivation of the Agency's personnel.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Agency of Natural Resources' Second Motion for Reconsideration is DENIED. Respondents' Motion for Sanctions, including for contempt and for attorneys' fees, are also DENIED as premature.

Done at Barre, Vermont, this 12th day of October, 2004.

_____
Merideth Wright
Environmental Judge

---

V.S.A. §8010(b) factors to be considered by the Court.