STATE OF VERMONT

ENVIRONMENTAL COURT

|   |   |
|---|---|
| In re: Fenoff Accessory Dwelling Application | } |
| | } Docket No. 280-12-06 Vtec |
| | } |
| | } |

Decision and Order on Cross-Motions for Summary Judgment

Appellants Charles R. Fenoff, Jr. and Kathy Fenoff appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Westmore, denying their application for an accessory dwelling unit. Appellants are represented by Charles D. Hickey, Esq.; the Town is represented by Edward R. Zuccaro, Esq. and Kristina I. Michelsen, Esq.; and Interested Persons Aline B. Harter, Elaine M. Cashin, and William L. Cashin, III, represent themselves, but have not taken an active role with respect to the pending motions.

Appellants and the Town have moved for summary judgment. The following facts are undisputed unless otherwise noted.

Appellants own property at the address of 104 Stoney Brook Lane, in the Town of Westmore. The property consists of what were[1] three small adjoining parcels of land located between Stoney Brook Lane and Stoney Brook (also known as Doring Brook), a year-round stream. Stoney Brook Lane has a traveled way approximately 17 feet in width. These three lots are the three most westerly of eight small lots along Stoney Brook Lane and were originally designated as Lots 6, 7, and 8 of that group. For the purposes of clarity in differentiating certain locations, and because the lots are referred to by the former lot numbers in the ZBA decisions, this decision will also refer to them by the former lot

---

[1] As of the unappealed April 7, 2006 ZBA decision, for zoning purposes the three lots are considered to be a single merged parcel of property.

1

numbers as necessary.

Former Lot 6 is .28 acre (12,197 square feet) in area, former Lot 7 is .34 acre (14,810 square feet) in area, and former Lot 8 is .33 acre (14,375 square feet) in area. Lot 8 is the most westerly of the lots; it is a corner lot that also has frontage on Vermont Route 5A. Due to the course of the brook, the merged property is only approximately thirty feet wide at the boundary between former Lots 7 and 8.[2] The westerly boundary of Lot 8, at Route 5A, is approximately 87½ feet wide, while the width of Lot 6 at the house location is approximately 120 feet. All linear measurements are by scale from the site plan. Former Lot 6 contained an existing house and wastewater system, and the other two lots were unimproved, or at least had no separate wastewater system.

Under § 204 and Table 201 of the 2006 Zoning Bylaw, and under Table 201 of the 2000 Zoning Bylaw, the minimum lot size for these lots is 40,000 square feet. Under § 301.2 of the 2006 Zoning Bylaw, existing small lots are specifically deemed to be merged with contiguous lots under common ownership, unless each lot had been developed with a functioning water supply and wastewater disposal system. The unappealed April 7, 2006 ZBA decision granting the Fenoffs a variance from the setback requirements for the structure on Lot 8 determined that all three undersized parcels had merged and would be considered as a single lot under § 301.2.

Because Stoney Brook (Doring Brook) is a year-round stream, the Shoreline Protection Area provisions of § 315.1 of the 2000 Zoning Bylaw (§ 316.1 of the 2006 Zoning Bylaw) are applicable. The Shoreline Protection Area extends fifty feet from the brook in

---

[2] The site plan for Appellants' proposed wastewater system designates the merged property as consisting of two lots, numbered 1 and 2, as if there were a property boundary at this location. Because the property is merged, and the proposed accessory structure can only qualify as accessory if it is on the same lot as the principal use or structure, this decision does not make use of the Lot 1 and Lot 2 designations.

2

the area of Appellants' property. The applicable setback to a road right-of-way is twenty-five feet. Zoning Bylaw, Table 201.

In 2004, Appellants had constructed a building and wastewater disposal system on Lot 8. The Zoning Administrative Officer issued a Notice of Violation for setback violations from the brook and the road. The Notice of Violation was upheld by the ZBA; Appellants appealed that decision in Docket No. 9-1-05 Vtec. The Notice of Violation appeal was placed on inactive status for a time, while Appellants applied for a variance or as-built permit to leave the structure and its wastewater system in place. In Docket No. 199-9-05 Vtec, Appellants appealed the ZBA's August 30, 2005 denial of that variance.

However, while those appeals were pending, newly-discovered evidence as to the width of Stoney Brook Lane resulted in a remand of Docket No. 199-9-05 Vtec to the ZBA for its consideration of the variance application in light of that evidence. In re: Appeal of Fenoff, Docket Nos. 9-1-05 Vtec and 199-9-05 Vtec (Vt. Envtl. Ct. Jan. 10, 2006) (unpublished entry order).

On April 7, 2006, the ZBA granted Appellants a variance to leave the accessory building in place,[3] but to use it only as a garage and for storage. The decision determined that the road had been laid out with a sixteen-foot-wide right of way, so that the building is set back 23½ feet from the edge of the right-of-way, and determined that the building's closest corner is located 24½ feet from the brook. The April 2006 ZBA decision denied approval of the use of the accessory building as an accessory dwelling, because it was within the Shoreline Protection area of Stoney Brook but failed to meet the separation distance requirements of § 315.3 between the 2004 septic system and the seasonal high water level of the brook. The April 2006 ZBA decision imposed several conditions,

---

[3] Based upon the grant of the variance, the Notice of Violation was withdrawn, resulting in the dismissal of Docket No. 9-1-05 Vtec as moot.

3

including a prohibition against using the structure for living quarters, a prohibition on the provision of water supply or toilet facilities to the building, and a requirement that the wastewater disposal system installed in 2004 be disconnected and its tank removed. The April 2006 ZBA decision was not appealed, and became final. Appellants complied with the disconnection and removal requirements of the April 2006 ZBA decision.

An amended Zoning Bylaw was adopted on June 6, 2006, effective June 27, 2006. It must have been proposed and noticed for its first public hearing at some time prior to that date, but the date of that notice has not been provided to the Court. Any application filed after that date should have been reviewed under the proposed 2006 Zoning Bylaw within the first five months (150 days) after that date. 24 V.S.A. § 4449(d).

The 2006 Zoning Bylaw contains § 319, regarding accessory dwelling units, which implements the 2004 statutory amendments. 24 V.S.A. § 4412(1)(E). Appellants had an engineering consultant test the soils on the merged property and design a water supply and wastewater system to serve the accessory building.[4]

The proposed wastewater system for the accessory building is a mound system that complies with both the 2002 and the 2006 state wastewater rules. The primary mound is proposed to be located 16½ feet from the edge of the right-of-way of Stoney Brook Lane, or 16 feet from the edge of the current traveled way. The proposed wastewater system is located between 50 and 55 feet from the high water level of Stoney Brook, that is, beyond the required setback from the brook. The replacement mound location is proposed to be located approximately ten feet, by scale, from the edge of the Route 5A right-of-way, and approximately twenty feet, by scale, from the edge of the traveled way of Stoney Brook

---

[4] The plans show a well with water lines serving both buildings, and show separate mound wastewater disposal systems for each building. It is not clear to the Court whether the disposal system shown on the plans as serving the existing house represents the existing system or a new proposed system for the house.

4

Lane.

On August 19, 2006, Appellants filed a new application for an accessory apartment; the application has not been provided to the Court in connection with the pending motions. The proposed accessory apartment meets the size requirements of § 319.1(2) of the 2006 Zoning Bylaw. It is proposed within the existing accessory structure that does not meet either the 25-foot front (roadside) setback or the 50-foot shoreline protection area (brook) setback.

The ZBA denied the application on the basis that the mound system for the proposed accessory apartment would violate the roadside setback requirements, and that it did not qualify for a variance[5] for the roadside setback. The ZBA also considered the conditional use criteria, and determined that the mound system for the proposed accessory apartment would have an adverse effect on traffic using Stoney Brook Lane.

This application is before this Court de novo in this appeal. The Court must apply the substantive standards that were applicable before the ZBA. 10 V.S.A. § 8504(h), V.R.E.C.P. 5(g).

Appellants have applied to create an accessory dwelling unit in an existing structure which itself does not meet the setback requirements of the Zoning Bylaw. It therefore must obtain conditional use approval under § 319.2, as well as meeting the applicable requirements of § 319.1. The parties do not dispute that the proposed accessory dwelling unit meets the requirement of § 319.1(2).

Section 319.1(1) requires that "[t]he property has sufficient wastewater capacity." This section does not require a showing of sufficient wastewater capacity for the proposed

---

[5] Material facts are in dispute, or at least have not been provided to the Court in connection with the pending motions, as to whether Appellants had applied for a variance for the roadside setback.

accessory apartment alone; rather, it requires a showing that the property as a whole (that is, the other uses on the property together with the proposed apartment) has sufficient wastewater capacity.

Under the proposal before the Court in this appeal,[6] the property as a whole only has "sufficient wastewater capacity" for the existing house plus the proposed accessory dwelling unit if the mound system proposed for the accessory dwelling unit can be approved. Two aspects of the proposed mound system are at issue in the present motions: the approval of its technical requirements as a wastewater system, and any non-technical (e.g., setback) requirements applicable under the Zoning Bylaw. Appellants argue that both the technical and the setback requirements for the mound system are preempted by state law, and also argue that the mound system should not be considered to be a "structure" subject to the setback requirements of the Zoning Bylaw.

Questions 1(a) through 1(e), and Question 3, of the Statement of Questions

The term structure is defined in § 402 of the Zoning Bylaw as "[a] combination of materials to form a construction for use, occupancy, or ornamentation[,] whether installed on, above, or below the surface of land or water." Because this definition specifically includes underground structures, wastewater systems fall within the definition, whether they are completely underground after installation, or whether they are mound systems that project above the normal grade level after installation. The proposed mound system therefore constitutes a structure under this definition. Summary judgment is therefore

_____

[6] A note on the plans states that each wastewater system shown on the plans is sized for a three-bedroom house, although an accessory dwelling unit is in fact limited under § 316.1 to a maximum of one bedroom. No proposals have been made to reduce the size of the system for the accessory unit or to increase the size of the system near the existing house to serve both dwelling units.

denied to Appellants and granted in favor of the Town on Questions 1(a) and 1(b) of the Statement of Questions.

However, a close reading of § 308 of the Zoning Bylaw suggests that only those structures that project above normal grade level are prohibited from projecting into the required setbacks. Section 308 states in full as follows:

> All structures, whether attached to the principal structure or not, and whether open or enclosed, including porches, carports, balconies, or platforms above normal grade level, shall not project into any required setback.

Even if culverts, driveways, and underground wastewater systems are not prohibited from projecting into the roadside setback area, as the proposed mound system[7] projects above the normal grade level, it is precluded by § 308 from projecting into the front setback of Stoney Brook Lane. Unless a variance is obtained from the roadside setback for the proposed primary[8] mound system, it cannot be built as proposed.

Appellants argue that the practice of the ZBA has been not to require a zoning permit for septic systems, not to require variances for septic systems within the roadside

---

[7]   The replacement mound, if built in the proposed location, also would not meet the municipal road setback requirements at either Stoney Brook Lane or Route 5A. However, Question 3 of the Statement of Questions suggests that no replacement mound is required for the system under the State Wastewater System and Potable Water Supply Rules, in which case its noncompliance with the road setback would be moot. Material facts are in dispute, or at least have not been provided to the Court, as to whether the state rules require a replacement area for this proposed system.

[8]   Within the Shoreline Protection Area, § 316.1(C) allows additions to existing structures, as long as they are no closer to the water than the existing structure and as far from the water as possible. Section 316.1(G) allows waiver of the Shoreline Protection Area provisions. However, even if the mound system is considered as an addition to the existing building, Appellants could only apply for a waiver of the shoreline setback under this section, not a waiver of the roadside setback.

7

setback, and to allow other structures such as fences, mailboxes and culverts within the roadside setback without requiring a variance. The issues raised in Questions 1(c), (d), and (e), as to the past practices of the ZBA in cases that were not appealed, are not relevant to the present analysis for two reasons. First, this is not a case arguing selective enforcement. In re Letourneau, 168 Vt. 539, 549–50 (1998). Second, the ZBA's interpretation it is not necessary as a matter of statutory construction, as the language of the Zoning Bylaw is not ambiguous language. See, e.g., In re Maple Tree Place, 156 Vt. 494, 499–500 (1991) (interpretation by municipal staff and zoning board may be determinative in a close case); In re Vermont Railway, 171 Vt. 496, 500 (2000) (consider agency's interpretation of its own statute if language is ambiguous).

Question 1(f) of the Statement of Questions

    Under 2007 State Rules

Under amendments to the state statutes regulating water supplies and wastewater disposal, as of July 1, 2007, "those provisions of municipal ordinances and zoning bylaws that regulate potable water supplies and wastewater systems" were "superseded by the provisions of this chapter and the rules adopted under this chapter." 10 V.S.A. § 1976(b). The Agency of Natural Resources adopted rules[9] carrying out these amendments effective September 29, 2007.

The 2007 ANR Wastewater System and Potable Water Supply Rules provide that towns may not have more stringent technical requirements, but also recognize that

---

[9] State of Vermont, Agency of Natural Resources, Department of Environmental Conservation, Wastewater Management Division, Environmental Protection Rules, Chapter 1, Wastewater System and Potable Water Supply Rules (Sept. 29, 2007) ("2007 ANR Wastewater System and Potable Water Supply Rules"), available at http://www.anr.state.vt.us/dec/ww/Rules/OS/2007/FinalWSPWSRuleEffective20070929.pdf

"[b]uildings or structures, potable water supplies, and wastewater systems may also have to comply with municipal ordinances and bylaws that require municipal permits." 2007 ANR Wastewater System and Potable Water Supply Rules, § 1-301(d).

In the Frequently Asked Questions section of the ANR Department of Environmental Conservation website related to these rules,[10] as well as in the ANR's Response to Comments[11] on the proposed rules, the ANR has made it clear that municipalities may continue to regulate the placement of wastewater and water supply structures and systems in the course of their general regulation of construction or development, so long as the particular regulation applies to all construction, structures, or development, and not only to wastewater systems qua wastewater systems.

Section 1-501(a)(1) of the 2007 Wastewater System and Potable Water Supply Rules describes such permissible types of municipal regulations as those that "are not specifically regulating potable water supplies and/or wastewater systems, but rather regulating development in general," and mentions setbacks as a specific example of a type of ordinance that regulates development in general.

The setback requirements in the Zoning Bylaw regulate development in general. They do not specifically regulate wastewater systems, and do not purport to address the technical standards or criteria for wastewater systems or potable water supplies. The state statute and the 2007 Wastewater System and Potable Water Supply Rules did not supersede or preempt the setback requirements of the Zoning Bylaw applicable to structures, even though they have superseded § 316.3 as to the technical standards for wastewater systems.

---

[10] Document provided as Town's Exhibit D; internet citation not provided.

[11] Document provided as Town's Exhibit E; internet citation not provided.

9

Under Former State Rules

As Appellants' application was filed before the effective date of the 2007 state wastewater rules, Appellants also argue that the prior ANR Wastewater System and Potable Water Supply Rules, which contain only a ten-foot roadside setback requirement, preempted the more stringent requirement of the Zoning Bylaw.

Prior to July 1, 2007, under § 316.3[12] of the Zoning Bylaw, an applicant could satisfy the municipal requirements for septic systems either by meeting the technical criteria under Option One or, under Option Two, by complying with the technical standards and design requirements in the 2002 ANR Wastewater System and Potable Water Supply Rules. The Town does not contest that the proposed mound wastewater system complies with the technical standards and design requirements under Option Two.

Preemption may be applicable "when the local law is a barrier to what the state has required to be done, or allows what the state has said must be prohibited." In re Patch, 140 Vt. 158, 177 (1981). In the present case, nothing in the local setback requirement allows what the state regulations prohibit, nor is the local setback requirement of 25 feet a barrier to compliance with the state's lesser required setback of ten feet. Compare, e.g., 2005 Rules § 1-503(a) (ten foot isolation distance) with Zoning Bylaw Table 201 (25 foot setback requirement).

Prior to the specific superseding language of 10 V.S.A. § 1976(b), therefore, the state regulations also did not preempt the roadside setback requirement of the Zoning Bylaw.

---

[12] Section 316.3 is entitled "Special Provisions of Septic Systems;" its introductory phrase states that its provisions apply "[i]n addition to those dimensional requirements . . . allowed in the designated Shoreline Protection Area."

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is DENIED, and the Town's Motion for Summary Judgment is GRANTED, as discussed above, as to Questions 1(a), 1(b), and 1(f) of the Statement of Questions. Summary judgment is DENIED as to Question 3 of the Statement of Questions as material facts are in dispute (see footnote 7, above).

A telephone conference has been scheduled (see enclosed notice) to determine what issues remain for trial. Please be prepared to advise the Court whether the ZBA had before it a request for a variance from the road setback for the mound system, and, if so, whether Question 1 or 1(g) brings the merits of such a variance before the Court in this appeal.

Done at Berlin, Vermont, this 19th day of March, 2008.

_____
Merideth Wright
Environmental Judge

11