# STATE OF VERMONT

# ENVIRONMENTAL COURT

In re: Appeal of Allen Mulheron

&

Town of Highgate, Plaintiff

v.

Allen Mulheron, Defendant.

}
}
}
}
}
}

Docket Nos. 172-8-00 Vtec
and 217-9-00 Vtec

## Decision and Order

In Docket No. 172-8-00 Vtec, Appellant Allen Mulheron appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Highgate, denying his appeal of a notice of violation, his request for a stay of enforcement, and his request for a variance from the front setback requirements. In Docket No. 217-9-00 Vtec, the Town has filed an enforcement action against Mr. Mulheron to enforce the front setback requirements. Appellant-Defendant is represented by Michael S. Gawne, Esq.; the Town is represented by David A. Barra, Esq.; Interested persons Lee and Lori Olds and Davey and Katherine LaFar, who own Lots 4 and 5 in the so-called Misty Meadows subdivision, have entered their appearance and represent themselves.

The Court ruled on summary judgment resolving Question 1 of the Statement of Questions and established that the method for measuring the front setback was to the edge of the property line, that is, to the edge of the surveyed road right-of-way rather than to the edge of the traveled way. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant-Defendant obtained subdivision approval in 1995 for a six-lot subdivision known as Misty Meadows. The lots range in size from 1.01 acres to 1.75 acres. The subdivision is served by a 50-foot-wide right-of-way, known as Misty Meadows Road, providing access from the lots to Carter Hill Road. The approved subdivision plan states that the right-of-way was planned to be deeded to the Town, and depicts the edge of the right-of-way as a dashed line. The right-of-way ends in a 110.8-foot-diameter cul-de-sac. The property is in the Agricultural zoning district, in which the minimum front and side setbacks are 60 feet. The approved subdivision

plan states the required setbacks in a note, and also depicts them on each lot as a dotted-and-dashed line marked " zoning setback line." The area within this line is sometimes also called the ' building envelope' for the lot, that is, the area within which a building could be placed.

For each lot, the approved subdivision plan shows the planned location of a drilled well and of a septic field, which may be located outside the building envelope as they are underground improvements and not structures. Within the building envelope for each lot, the approved subdivision plan also shows a " proposed house site." The proposed house sites for each lot meet the isolation distances from the wells and septic fields and the setback requirements of the zoning bylaws.

Appellant-Defendant owns Lot 6 in the subdivision, which according to the subdivision plan has 234.69 feet of frontage on the right-of-way and 23.17 feet of frontage along the curve of the cul-de-sac. On December 2, 1999, Appellant-Defendant applied for a building permit to build a single-family modular home on the lot. The application form states " all construction to be completed in accordance with the Zoning Laws of the Town of Highgate and the State of Vermont." The sketch plan on the application, provided by Appellant-Defendant, shows the front setback to the subdivision road as 70 feet, and the side setback to the LaFar property as 90 feet. The Zoning Administrator approved the permit on December 14, 1999. Lee Olds appealed the permit to the ZBA, which upheld it in February 2000 as meeting the Zoning Bylaws. No party further appealed the permit, and it became final. However, Mr. Olds' appeal raised the question of whether " the mobile home was too close to a right-of-way" and the ZBA' s decision discussed the question of " whether the home as built violates the permit and/or the Zoning Bylaws;" therefore, we find that the slab was installed and the home was placed on it some time in late December 1999 or January 2000.

An electric utility line passes across the rear portion of Lot 6; it is shown in the 1995 approved subdivision plan. Lot 6 also contains an outcrop of ledge above the surface of the original ground level, which was apparent and not hidden from view in 1995 when Appellant-Defendant applied for and obtained the subdivision approval, and in 1999 when Appellant-Defendant applied for and obtained the building permit for the construction on Lot 6. Wishing to avoid the expense of moving or burying the power line and of blasting or otherwise removing enough of the ledge in the area of the proposed house sufficient to install the slab for the house, Appellant-Defendant instead installed a concrete slab and placed a double-wide modular home on the slab, located in part within the front setback area and outside the building envelope. He brought in fill to level the site for placement of the slab and house. Prior to construction, Appellant-Defendant did not seek any amendment of the subdivision plan or of his building permit, nor did Appellant-Defendant seek a variance to extend the house into the front setback.

The front side of the house as-built is located at its nearest point 41.14 feet from the surveyed edge of the right-of-way and at its farthest point 50.35 feet from the surveyed edge of the right-of-way. It is therefore in violation of the front setback requirements of the Zoning Bylaws by approximately ten to nineteen feet.

The Zoning Administrator notified Appellant-Defendant of the violation in writing on June 1, 2000, and gave him seven days to cure the violation. In an effort to cure the violation by

obtaining a variance from the front setback requirements for the as-built location, on June 12, 2000, Appellant-Defendant applied for the variance from the front setback requirements that is the subject of this appeal. As the reason for appeal, he stated: " LEDGE = UNIQUE PHYSICAL CIRCUMSTANCES." The ZBA denied the variance application on July 27, 2000.

Two other applications for variances involving ledge have been made within the Town since Appellant-Defendant' s 1999 building permit application, that is, since the time his variance application should have been filed. Both were granted. The Brouilette lot contained an existing home and garage, involved slopes and banks (unusual topography) as well as the ledge, and was not the subject of a subdivision plan approval showing an approved building envelope. The Breton lot contained ledge discovered only after site preparation had begun for building in the location approved in the subdivision plan. Moreover, neither of those variances was appealed, and this court did not determine whether they met the statutory variance criteria.

The slab and house on Lot 6 remained at its as-built location through the date of trial on September 4, 2001; the Court has not been informed that it has been moved since that date. The Town expended 1,914.68 in legal expenses to enforce its Zoning Bylaws in this matter.

Variance

In order to qualify for a variance, Appellant must meet all five requirements of 24 V.S.A § 4468, as incorporated in § 240 of the Zoning Bylaws:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning regulation in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning regulation and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That the unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the zoning regulation and from the plan.

The presence of ledge on Lot 6 within the building envelope is not a unique physical circumstances or condition peculiar to the particular property. It is not uncommon to have to deal with the presence of ledge on building sites.

With the expenditure of money to remove a portion of the ledge and move or bury the power line, the property can be developed in strict conformity with the provisions of the zoning bylaws. Therefore, a variance is not necessary to make a reasonable use of the property.

Most importantly, under Vermont law, Appellant has created the hardship from which he now seeks relief. That is, Appellant applied for and received subdivision approval of the particular configuration of Lot 6, including its building envelope, knowing the condition of the land and the presence of ledge on it. By creating lot 6 in that configuration, he cannot now claim he should receive relief from the expense of dealing with the presence of ledge in the building envelope on that lot. See, e.g., In re Cumberland Farms, Inc., 151 Vt. 59, 61 (1989) and cases cited therein.

Finally, although it would have been more expensive to place the house within the building envelope, the proposed setback variance does not represent the minimum variance which could afford relief, as the evidence showed that Appellant could have removed sufficient ledge and could have moved the power line to place the house within the building envelope.

Enforcement Action

Appellant-Defendant argues that the Town has engaged in selective enforcement against him, by granting variances to two other applicants with ledge on their property. A litigant wishing to show selective enforcement must show more than the bare fact that the municipality has failed to enforce the zoning ordinance in similar circumstances. Rather, the litigant must meet both parts of a two-part test. The litigant must show not only that the person, compared with others similarly situated, was selectively treated; but also that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. In re Appeals of Letourneau, 168 Vt. 539, 549 (1998) (citations omitted).

Appellant-Defendant did not show the first prong of the test. Not only did the other two examples of variances granted for the presence of ledge differ on their facts from the present case, but they were not enforcement actions. To show selective enforcement, it is necessary to compare the Town's failure to bring an enforcement action against another violation with its decision to bring an enforcement action against Appellant-Defendant, in circumstances similar to that in the present case, and that the decision to enforce against Appellant-Defendant was motivated by the impermissible considerations. Appellant-Defendant has shown that some degree of personal animus or business competition may exist between himself and the Zoning Administrator, the Chair of the ZBA, and the Chair of the Planning Commission. However, he has not shown that the determination to bring the enforcement case was motivated by a malicious intent to injure him. We also note that the determination of whether Appellant-Defendant qualifies for a variance was made de novo by the Court in the present appeal unaffected by those circumstances.

Appellant-Defendant has violated the Zoning Bylaws of the Town of Highgate, the 1995 subdivision approval, and the 1999 building permit, by constructing the slab and installing the modular home on Lot 6 within the front setback area. The Town requests both a penalty and an order that the modular home be moved on the lot to bring it into compliance. Both requests are granted. Appellant-Defendant will be required to move the house within the building envelope as shown on the approved subdivision plan, and, if the proposed location differs from that shown on the 1999 building permit, he must also apply for and obtain an amended building permit before taking that action.

The Town requests a penalty of $5 per day for each day of violation between June 1, 2000, the date of the notice of violation, and September 26, 2001, the date of its request, a period of 475 days, for a total of $2,375. We note that the earliest date from which a penalty could be calculated would be June 8, after the seven day period to cure given in the Notice of Violation. However, in the present case we recognize that Defendant-Appellant attempted to cure by making the belated application for a variance, and requested a stay of enforcement. The ZBA did not rule on the variance request or the stay until July 27, 2000; therefore the penalty will be calculated from that date. The penalty should compensate the Town if possible for the costs of enforcement and should also recognize the factors affecting the significance of the violation. In the present case, we consider in particular that Appellant-Defendant himself applied for, obtained, and declined to appeal the provision of the permits he later violated. He chose to install the slab in a location other than that approved on the subdivision plan or the building permit, without applying for an amendment of those approvals or permits, and without attempting to request a variance until after being notified of the violation. Accordingly, the Court will impose a penalty of $6 per day from July 27, 2000 through September 26, 2001, a period of 426 days, for a total penalty of $2,556.

Based on the foregoing, it is hereby ORDERED and ADJUDGED in Docket No. 172-8-00 Vtec that Appellant Allen Mulheron does not qualify for a variance for the as-built location of the home on Lot 6 of the Misty Meadows subdivision, and a variance is therefore DENIED.

Based on the foregoing, it is hereby ORDERED and ADJUDGED in Docket No. 217-9-00 Vtec that Defendant Allen Mulheron has violated the Zoning Bylaws of the Town of Highgate, the 1995 subdivision approval, and the 1999 building permit, by constructing the slab and installing the modular home on Lot 6 within the front setback area.

Beginning as soon as the 2002 construction season makes the work possible, and so that it is completed by or before May 31, 2002, Appellant-Defendant shall prepare the site and shall install a slab or slab addition sufficient to move the house within the building envelope as shown on the approved subdivision plan, and shall move the house to the approved location. If the proposed location differs from that shown on the 1999 building permit, Appellant-Defendant shall first apply for and obtain an amended building permit before commencing any work, including any site work.

Appellant-Defendant shall pay a penalty to the Town of $6 per day for each day of violation between July 27, 2000, the date of denial of the variance and September 26, 2001, the date of the last requested findings, a period of 426 days, for a total of $2,556. This penalty is intended to

compensate the Town for the costs of this enforcement action as well as to recognize that Appellant-Defendant himself applied for, obtained, and declined to appeal the provision of the permits he later violated and that he chose to install the slab and house in a location other than that approved on the subdivision plan or the building permit, without applying for an amendment of those approvals or permits, and without attempting to request a variance until after being notified of the violation. We note for the parties' guidance that if Appellant-Defendant does not move the house by the date required in this order, in any proceeding to further enforce this order he may be liable to the Town for a penalty of up to $100 per day under 24 V.S.A § 4444, and other remedies as may be appropriate in an action under 24 V.S.A § 4470(c) or in a contempt proceeding.

    Dated at Barre, Vermont, this 16th day of January, 2002.


_____
Merideth Wright
Environmental Judge