**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

| | | |
|---|---|---|
| In re Martin & Martin Variance | } | Docket No. 3-1-09 Vtec |
| (2008 Application; #08-04) | } | (Appeal from Dorset ZBA) |

**********************************************************************************

| | | |
|---|---|---|
| In re Martin & Martin Variance | } | Docket No. 215-11-09 Vtec |
| (2009 Application; #09-04) | } | (Appeal from Dorset ZBA) |

## Decision on the Merits

Brothers Jeffrey B. Martin and Gregory F. Martin ("Applicants") own three adjoining parcels of land on the easterly slope of a hillside, off of the Town Highway known as Upper Hollow Road, and accessed by a private roadway known as Red Tail Lane. One of Applicants' lots includes a pre-existing single family dwelling; the two remaining lots are presently undeveloped, other than the driveway that leads to the existing residence on the middle lot.

Applicants wish to further develop their hillside properties through the construction of one or more additional single family dwellings, together with an additional drive and support facilities, including water supply wells and on-site waste water disposal systems.

The primary characteristic of Applicants' land that is complicating their efforts to develop is that their properties are on a hillside that has consistently steep slopes, many of which are in excess of a 20% grade and some of which are in excess of a 30% grade. When the Town of Dorset Development Review Board ("DRB") denied each of Applicants' two requests for a variance from the steep slope provisions of the Town of Dorset Zoning Bylaws ("Bylaws"), Applicants filed a timely appeal with this Court from each DRB determination.

When the parties were unable to arrive at a voluntary resolution of their dispute, either through confidential discussions or with the assistance of an impartial mediator, these matters were consolidated and proceeded to a de novo merits hearing. At trial, Applicants were assisted by their attorney, Marilyn F. Hand, Esq.; the Town of Dorset ("Town") was assisted by its counsel, Joseph J. O'Dea, Esq. Kathleen "Kit" Wallace appeared as an Interested Person, representing herself, and the Dorset Hollow

1

Corporation also appeared as an Interested Person in these consolidated proceedings, through Kit Wallace, its president.

The trial was conducted over two days: February 9 and 10, 2011. The Court and the parties conducted a site visit to Applicants' properties and the surrounding areas at the end of the first day of trial. The parties were thereafter afforded an opportunity to make post-trial filings. Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact, Conclusions of Law, and Order:

## Findings of Fact

1. Applicants' land is located on the easterly side of a hillside within an area commonly known as Dorset Hollow. This section of Town provides a strikingly beautiful natural area where individual residences are broadly spaced within and below wooded hillsides, with open fields in the lower elevations of the Hollow. The lower portion of Dorset Hollow is accessed by a Town Highway known as Lower Hollow Road; another Town Highway, known as Upper Hollow Road, travels in part along the east-facing hillside of the westerly portion of Dorset Hollow; Upper Hollow Road provides access to the private roadway known as Red Tail Lane, which provides access to Applicants' properties and several other parcels of land, at least one of which has been developed with a single family dwelling.

2. Applicants' properties and the surrounding area are located in the Forest II Zoning District ("Forest II District"), which includes "[l]ands above 1,600 feet and below 2,000 feet" in elevation. Bylaws § 5.3.

3. Permitted uses in the Forest II District include farming, forestry, recreation, private recreational hunting and fishing camps, and (subject to certain enumerated conditions) single family dwellings. Bylaws § 5.3.1(1)–(9).

4. Additional uses that are allowed in the Forest II District, subject to approval under the conditional use criteria, include: (1) customary home occupations; (2) non-profit or for-profit organized camps for adults, families or children; (3) private hunting or fishing camps, with limited structural facilities; (4) earthen minerals, gas and oil extraction; (5) springhouses, reservoirs, and accessory structures; (6) sawmills and other wood processing operations; (7) firewood and cordwood processing operations; and (8) mixed residential and conditional uses. Bylaws § 5.3.2(1)–(8).

5. Lots created under the current Bylaws may not be less than 10 acres in size. Bylaws § 5.3.4(1).

6. Applicants' properties were once part of a larger lot that was created through a subdivision by the Dorset Hollow Corporation in approximately 1972. At that time, Dorset Hollow Corporation owned approximately 800 acres in the area now known as Dorset Hollow and subdivided its land into 37 separate lots, one of which contained the land now owned by Applicants. This subdivision by the Dorset Hollow Corporation was not reviewed or approved pursuant to the Town of Dorset Subdivision Regulations ("Subdivision Regulations") because those regulations were not then in effect.

7. The three individual lots now owned by Applicants were created in 1983 by the then owners of the land: Mr. and Mrs. Richards. The Richards' 1983 subdivision was not reviewed and approved under the Subdivision Regulations, since the regulations did not exist at that time, either.

8. The Subdivision Regulations were first enacted in 1988, have been amended, and remained in effect through the trial date.

9. Applicants acquired the three lots that they now propose to further develop in 2005. At the time of their purchase, they retained an engineer and attorney who advised them of the development restrictions on these properties by virtue of their steep slopes and the applicable provisions of the Bylaws.

10. With the exception of the low lying open fields in Dorset Hollow, most of the land in Dorset Hollow are steeply sloped, located on opposing hillsides, and generally surround the low lying open fields.

11. The hillsides in Dorset Hollow are generally of 20% grade or steeper. Credible testimony estimated that Applicants' properties have an average grade of 28% and include areas that are in excess of 30% grade.

12. The grade or slope of a hillside is calculated by comparing the rise in elevation of the land over an identified distance. Thus, if a portion of land rises one foot in elevation over a level distance of five feet, it would be regarded as having a 20% grade or slope. The percent of a slope must be distinguished from the degree at which land rises, since land that rises one foot for every foot of level distance would be said to rise at a 45° angle but have a slope of 100%.

13. On September 18, 2008, Applicants filed their first application with the Town of Dorset Zoning Board of Adjustment ("ZBA") to request a variance from both the slope limitations for building sites (Bylaws § 3.6.2) and the limitation on when single family

3

dwellings are permitted in the Forest II District.[1]  The ZBA assigned #08-04 to this application; it is hereinafter referred to as Application #08-04.  By that application, Applicants requested a variance from the applicable Bylaws to allow them to "cross[] 20% slopes [on p]re-existing lots that are not accessible without crossing 20% slopes." The ZBA understood that Applicants also sought a variance from the 20% slope limitations so that they could build a single family dwelling on each of their two unimproved, steeply-sloping lots.  A copy of Application #08-04 was admitted at trial as Exhibit 6.

14.    Applicants submitted a site plan with their Application #08-04; a copy of that site plan was admitted at trial as Exhibit 18.  This site plan shows proposed improvements on what are identified as Lot 1 (10± acres) and Lot 2 (30± acres).[2]  These improvements include a single family dwelling on each of the lots; water supply wells and a waste water disposal system for the dwellings; and a new shared access drive that would serve the two new dwellings.  The new access drive would be about 2,200 feet long, would cross slopes of between 20% to 30% grade, or more, and would require much grading and earthen embankments because of these significant slopes. The proposed dwellings, water supply wells, waste disposal system, and related infrastructure would also be constructed on equally steep slopes.

15.    On December 8, 2008, the ZBA announced its decision to deny Applicants' variance request.  Applicants thereafter filed a timely appeal with this Court; that appeal was assigned Docket No. 3-1-09 Vtec.

16.    While the Docket No. 3-1-09 Vtec appeal was pending with this Court, Applicants filed a second application with the ZBA.  This second application, dated May 20, 2009, also requested a variance from the applicable Bylaw provisions concerning steep slopes.  The ZBA assigned this application #09-04; a copy of this application was admitted at trial as Exhibit 10.

17.    Applicants hired a Vermont licensed engineer to assist with their presentation in support of their second application: Ellis H. Speath, Jr., of Manchester Center, Vermont.  Mr. Speath explained, both at trial and in a cover letter that accompanied

---

[1]  In addition to the general slope limitations for building sites contained in Bylaws § 3.6.2, an additional Bylaw provision prohibits the construction of residential buildings on lots that were not reviewed and approved under the existing Subdivision Regulations and where the proposed development is on slopes that "are equal to or exceed 20%."  See Bylaws § 5.3.1(8)(d)

[2]  This site plan also depicts Applicants' third lot, unnumbered, in between Lots 1 and 2, on which their pre-existing single family dwelling is located.

4

Application #09-04, that it was based upon a site design that was different from the first application's site design in the following respects:

    a. Applicants would reconfigure their lots, reducing their number from three to two. The new Lot 1 would contain 27± acres and host the pre-existing single family dwelling; the new Lot 2 would contain 23± acres and host the only additional single family dwelling.

    b. The new driveway would now only serve the additional dwelling on Lot 2 and would more closely "match the existing contours" of the land it travelled over, albeit over land with slopes in excess of 20% grade. This new drive would also not require as much earthen cut and fill work, since there would no longer be a need to "switch back" to serve the previously proposed third dwelling.

    c. The driveway would be reduced in size to a twelve-foot width, as compared to the sixteen-feet width called for in Application #08-04.

    Exhibit 10 at 1–2.

18. The ZBA conducted one or more public hearings and deliberative sessions on Application #09-04. The record is unclear on the specific time at which the ZBA conducted its vote on whether to grant or deny Applicants' second variance application.

19. The ZBA issued Findings of Fact and Conclusions of Law dated August 31, 2009 that evidenced that the ZBA voted to deny Application #09-04. Applicants assert that they never received a copy of the ZBA's August 31, 2009 Findings and Conclusions; the Town asserts that a copy was mailed by first class mail, postage pre-paid, to each of the Applicants at the addresses they last provided to the ZBA. The Town concedes that it did not forward a copy of the ZBA Findings and Conclusions to each of the Applicants by certified mail, return receipt requested, as required by 24 V.S.A. § 4464(b)(3).

20. As noted in our Entry Order of December 10, 2010 denying Applicants' motion for summary judgment, the minutes from the ZBA's August 10, 2009 public hearing and private deliberations "are not a model of clarity."[3] However, the credible testimony presented at trial revealed that the ZBA rendered its decision on Applicants' second variance request and mailed a copy of its August 31, 2009 Findings and Conclusions to Applicants by first class mail, postage pre-paid, to the address last provided by Applicants to the ZBA.

---

[3] In re Martin & Martin Variance Application, No. 215-11-09 Vtec, slip op. at 2 n.4 (Vt. Super. Ct., Envtl. Div. Dec. 10, 2010) (Durkin, J).

21. The Court granted an extension of the time in which Applicants could file a timely appeal of the ZBA August 31, 2009 Findings and Conclusions. Applicants made that timely filing of their appeal on November 4, 2009; the Court assigned Docket No. 215-11-09 Vtec to Applicants' second appeal.

## Discussion

When a municipal land use determination is appealed to this Court, our first responsibility is to determine whether that appeal is to be heard de novo or on-the-record. This determination is wholly based upon whether or not the municipality has taken the requisite actions to have appeals of its land use determinations heard on-the-record, pursuant to 24 V.S.A. § 4471(b). It is undisputed that the Town of Dorset has chosen not to have the appeals of its land use determinations heard on-the-record, so we proceeded with an evidentiary hearing and now render factual and legal determinations de novo in each of these consolidated appeals.

The standard of review becomes important when reviewing the legal issues posed in Applicants' Statement of Questions in each Docket, since we are not called upon in de novo appeals to consider the propriety of the decision appealed from, but rather are charged with making our own factual and legal determinations based upon the evidence presented at our appellate trial. See, e.g., In re Cote NOV, No. 273-11-06 Vtec, slip op. at 3 (Vt. Envtl. Ct. Aug. 22, 2007) (Durkin, J.); see also In re Poole, 136 Vt. 242, 245 (1978) ("A de novo hearing is one where the case is heard as though no action whatever had been held prior thereto. All of the evidence is heard anew, and the probative effect determined by the appellate tribunal (superior court here) [is] as though no decision had been previously rendered"). In fact, we are directed to render our de novo determinations without regard to the factual and legal determinations made by the municipal panel. See Poole, 136 Vt. at 245.

With this standard of review in mind, we note that many of the Questions Applicants pose in each Docket challenge the sufficiency and propriety of the ZBA's determinations below.[4] (See Appellants' Statement of Questions on Appeal, Questions 1–6, 12). We decline to respond directly to Questions 1–6 and 12 since this Court does not have the jurisdictional authority to assess the determinations of a municipal panel in a de novo appeal. Rather, we understand that by these Questions Applicants

---

[4] Applicants' Statement of Questions in Docket Nos. 3-1-09 Vtec and 215-11-09 Vtec are identical; each Statement of Questions contains 14 Questions with identical wording. Therefore, all Questions in this Decision are referenced by the number Applicants assigned them in their identical Statements of Questions from each Docket.

have presented the general question to this Court of whether either or both of their variance requests should be approved. Applicants have also raised a number of other legal issues, which we address in sequence below, in their remaining Questions, Questions 7–11, 13, and 14.

## I.    **Variance standards**

Variances, by their very nature, run counter to the goal of zoning. They are "individual exceptions to generally applicable rules of zoning, the purpose of which 'is to bring about the orderly physical development of the community.'" In re Mutschler, 2006 VT 43, ¶ 7, 180 Vt. 501 (mem.) (quoting In re Maurice Mem'ls, 142 Vt. 532, 535 (1983)). Variances act as "an escape hatch from the literal terms of an ordinance which, if strictly applied, would deny a property owner all beneficial use of his land and thus amount to confiscation." Id. (quoting Lincourt v. Zoning Bd. of Review, 201 A.2d 482, 485–86 (R.I. 1964)). As a result, a landowner has the steep burden of proving that a variance is warranted. L.M. Pike & Son, Inc. v. Town of Waterford, 130 Vt. 432, 435 (1972). To receive a variance, a landowner must show that:

(1) There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to these conditions, and not the circumstances or conditions generally created by the provisions of the bylaw in the neighborhood or district in which the property is located.

(2) Because of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the bylaw, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) Unnecessary hardship has not been created by the appellant.

(4) The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, or be detrimental to the public welfare.

(5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the bylaw and from the plan.

24 V.S.A. § 4469(a)(1)–(5).[5]

---

[5]   The variance criteria established by § 4469(a)(1)–(5) are mirrored in the Town's Bylaws. See Bylaws § 12.9.2(1)–(5). Henceforth, in this Decision, we refer to the individual variance criteria by their number from the statute and Bylaws.

Demonstrating the need for a variance is a high burden indeed, because a variance "must be based on a showing of conformance with each of the five statutory criteria." In re Dunnett, 172 Vt. 196, 199 (2001) (quoting Blow v. Town of Berlin Zoning Adm'r, 151 Vt. 333, 335 (1989)). "If just one criterion is not satisfied the variance must be denied." In re Ray Reilly Tire Mart, 141 Vt. 330, 332 (1982).

With this standard in mind, we turn to the credible evidence presented at trial to determine whether Applicants have satisfied all five variance criteria for either or both of their applications. For the reasons detailed below, we conclude that Applicants have failed to satisfy variance criteria 1, 2, 4 & 5 for each of their applications and that therefore both of their applications must be **DENIED**.

As to variance criterion 1, we note that the overwhelming evidence, including that which Applicants presented, is that many parcels of land throughout Dorset Hollow have steep slopes. This characteristic of Applicants' land is by no means unique; steep slopes are prevalent throughout this neighborhood and are common throughout this zoning district. Much of the higher elevation land within Dorset Hollow, particularly land above 1,600 feet, consists of hillsides that tend to be of 20% grade, or more. There was no evidence presented that steep slopes are unique to Applicants' land. For these reasons, we must conclude that the physical circumstances of Applicants' land that gives rise to their need for a variance are not unique to their parcels. Thus, Applicants failed to satisfy criterion 1, as codified in 24 V.S.A. § 4469(a)(1), for both of their applications.

Under variance criterion 2, we are required to ask whether "any reasonable use can be made of the property which is in strict conformity with the zoning regulations"; if such a use can be made, criterion 2 is not satisfied. Gadhue v. Marcotte, 141 Vt. 238, 240 (1982). In an effort to show they meet variance criterion 2, Applicants presented much evidence of how impractical or less valuable it would be for them to devote their property to the other permitted uses. There was no evidence presented to contradict Applicants" claims that devoting their property to the production of firewood or other permitted uses may be difficult and lack the profitability of a residential development, but their argument lacked a credible showing that their land could not be put to "any reasonable use . . . [that] is in strict conformity with the zoning regulations." Gadhue, 141 Vt. at 240.

Applicants provided a brief presentation of when their land was last logged and the estimated meager financial return that a renewed logging of their properties could

bring. But, Applicants failed to present evidence to show how the complained-of steepness of their land prohibits them from undertaking any of the other uses permitted in the Forest II District, or the uses allowed after conditional review approval. For instance, Applicants failed to present persuasive evidence of why their land could not be used for farming, forestry, recreation, or a private recreational hunting or fishing camp; all such uses are permitted in the Forest II District. Bylaws § 5.3.1(1)–(7). While the lay of Applicants' land limits the potential uses to which it may realistically be put, it is a property owner's responsibility, when considering whether to purchase a parcel of land, to first determine what uses the land can be put under the applicable regulations. While Applicants may prefer to use their land in a manner that does not conform to the Town's regulations, they must show that "no reasonable use can be made" in order to be entitled to a variance. See Gadhue, 141 Vt. at 240. Applicants failed to do so and thus, they failed to satisfy the second variance criterion, as codified in 24 V.S.A. § 4469(a)(2).

Regarding criterion 3, there was no assertion made at trial that Applicants created the hardship for which they now seek a zoning variance. There was some evidence presented, essentially undisputed, that Applicants were well aware of the steepness of these land prior to their purchase in 2005, and that, prior to closing, Applicants were made aware by an engineer they retained that the current Bylaws would make residential development of the land difficult, if not impossible. But, the applicable question before us is whether Applicants "created" the hardship, not whether they were aware of it prior to purchase. Applicants are entitled to a favorable ruling under variance criterion 3, as codified in 24 V.S.A. § 4469(a)(3).

Under criterion 4, there was much testimony offered at trial concerning the character of the surrounding area; much of that testimony related to the occasional residential dwellings interspersed within Dorset Hollow. The credible evidence showed that the land within Dorset Hollow is developed but only in an intermittent manner. While there are certainly homes within Dorset Hollow, there are not many. Also, several of these existing homes are located in the low-lying land, near open fields and away from the steep sloping land that exists in the higher elevations and that characterizes Applicants' land. Where there are some dwellings on steep slopes in Dorset Hollow, they are few in number and broadly spaced.

There was some evidence presented that two or three dwellings within Dorset Hollow received permit approval and were developed after the current Subdivision

Regulations and Bylaws were enacted, but there was no credible evidence presented that any developments were approved on land with consistently steep slopes, which is the undisputed characteristic of the land that Applicants propose to develop.

Applicants' first proposal, if approved, would allow for a clustering of three homes on a steep hillside. There was no other example of such clustering in Dorset Hollow presented at trial. The existing homes are so broadly spaced in Dorset Hollow that even Applicants' second proposal, which would call for only two adjacent lots developed with single family residences, would be unique to the area. As such, to allow Applicants' development as proposed in either application would alter the essential character of the Dorset Hollow neighborhood. Either proposal would be in conflict with variance criterion 4, as codified in 24 V.S.A. § 4469(a)(4).

Lastly, we turn to variance criterion 5, codified in 24 V.S.A. § 4469(a)(5). Applicants put forth sincere testimony that they only wish to develop their lots with single family dwellings for use by their immediate family members. As proposed, both of their development plans conform to the minimum lot size and use requirements for the Forest II District. But, both also require a complete deviation from and disregard of the Bylaw provisions concerning steep slopes.

This is not a situation, as evidenced by one or two of the already permitted Dorset Hollow residences, where only a portion of the development would encroach upon prohibitedly-steep slopes. Both of Applicants' developments call for proposed new building and access drives to be on slopes in excess of 20% and some development would be on slopes that exceed 30%, which represents a 150% increase from the grade on which the Bylaws allow development.

Allowing Applicants to develop on such steeply-sloped land as their proposals require does not "represent the minimum variance that will afford relief and will represent the least deviation possible from the [applicable zoning] bylaw." 24 V.S.A. § 4469(a)(5). In fact, the proposed development appears to represent quite the opposite. We therefore must conclude that Applicants have failed to satisfy the fifth and final variance criterion.

Given that 24 V.S.A. § 4469(a), and its companion provisions in the Town's Bylaws (Bylaws § 12.9.2), direct that a variance shall be granted only if positive factual findings are rendered under all five variance criteria, we must **DENY** both of Applicants' variance applications as a matter of law.

10

## II.  Applicability of minimum lot size provisions

By their Questions 7, 8, and 9 in both appeal dockets, Applicants infer that the minimum lot size provisions in applicable state law (24 V.S.A. § 4412(2)) and municipal regulations (Bylaws § 3.4.1) authorize their proposed development, or some variation of their development, provided that such development only occurs on areas of their land that do not exceed 20% in slope.  The Court is somewhat mystified by the present applicability of these Questions, since no evidence was presented at trial as to any sufficiently sized area on any of Applicants' lots that is under 20% in slope and could accommodate their proposed development.   No alternate site plan was presented, nor even suggested to support the very premise these Questions are based upon.  Additionally, there was no suggestion at trial, by either Applicants or the Town representatives, that any of Applicants' lots should be regarded as under the 10-acre minimum lot size required for the Forest II District.

To the extent that Applicants still wish the Court to consider these Questions, we note that they failed to present any evidence that their lots contain sufficient areas of allowable slopes.  We therefore conclude that Questions 7, 8, and 9 do not present legal issues that afford Applicants relief in these proceedings and hereby **DENY** Questions 7–9.

## III.  Municipality's authority to regulate

By their Question 10 and 11 in both Dockets, Applicants challenge the Town's authority to prohibit development on lands of 20% slope or greater.  Applicants provided no foundation for this legal premise, either at trial or in pre-trial filings; our research revealed that no applicable foundation exists for their challenge.  As our Supreme Court previously affirmed, "[t]he law is well settled that governments may exercise their regulatory power to institute zoning . . . when the zoning reasonably relates to the public health, safety, morals or welfare."  State v. Sanguinetti, 141 Vt. 349, 351 (1982) (citing Village of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926) and City of Rutland v. Keiffer, 124 Vt. 357, 359 (1964)).

The current Bylaws were enacted for the specific purposes to "encourage appropriate development of lands in the Town of Dorset in a manner that will promote the public health, safety, and general welfare; to provide methods for prevention of such land development problems as may be foreseen; for protection of the advantageous natural environment of the area; and for encouragement of economic well-being for the benefit of all citizens."  Bylaws § 1: PURPOSE.

11

The testimony and other evidence at trial reinforced the spirit of this purpose provision; the Town's prohibition against development on land with 20% or greater slope reasonably relates to concerns for public health and safety, and for the preservation of the beautiful, yet steep, slopes that occupy Dorset Hollow. Development on such steep slopes presents risks above and beyond that of development of a flat parcel, including the risk of soil erosion from construction activities. We therefore conclude that the Town is within its regulatory authority to prohibit development on land with slopes of 20% or greater grade. The challenges to that regulatory authority presented in Applicants' Questions 10 and 11 must be **DENIED**.

## IV. Applicability of minimum lot size provisions

By their Question 13 in both Dockets, Applicants ask whether they are entitled to an abatement of their real estate tax assessment and refund of taxes previously paid in the event they are not allowed to develop their properties as they desire. This Question is wholly beyond this Court's jurisdictional authority, which is limited to the adjudication of land use regulatory appeals (state and municipal) and environmental enforcement actions. See 4 V.S.A. § 34. This Court has no authority over "abatement of real estate taxes, reimbursement for taxes previously paid and compensation for the fair market value" of Applicants' lots, absent the authority to develop. (See Appellants' Statement of Questions on Appeal, Question 13). For these reasons, Applicants' Question 13 must be **DISMISSED**.

## V. Constitutionally of steep slope restrictions

By their final Question in each Docket, Question 14, Applicants question the constitutional validity of the steep slope provisions of the Bylaws "and the ZBA's Decision implementing said Bylaws." Question 14, like Questions 10 and 11, challenges the Town's authority to regulate land use through the adoption of specific zoning regulations that restrict or prohibit development upon land with slopes of 20% or greater grade. See Bylaws §§ 3.6.2 and 5.3.1(8).

Applicants failed at trial to put forth evidence and legal arguments to support their claim of constitutional infirmity; their lack of presentation caused the Court to also be somewhat mystified by the applicability of this Question in these appeals. As with Questions 10 and 11, we conclude that the Town has established a sufficient legal foundation for its authority to regulate land uses, so as to protect "the public

health, safety, morals [and] welfare." <u>Sanguinetti</u>, 141 Vt. at 351.  For these reasons, Applicants' Question 14 in both Dockets is **DENIED.**

**Conclusion**

For all the reasons more fully discussed above, we conclude that Jeffrey B. Martin and Gregory F. Martin have failed to show that they meet the criteria allowing us to grant either of their applications for variances from the steep slope provisions contained in the Town of Dorset Zoning Bylaws (specifically, Bylaws §§ 3.6.2 and 5.3.1(8)).  Therefore, both of Applicants' applications must be **DENIED**.  As stated above, we also fail to find merit or jurisdictional authority to consider the other legal issues raised by Applicants in their Questions 7–11, 13 and 14 and therefore enter **DENIALS** or **DISMISSALS** as to those Questions in each appeal.

A Judgment Order accompanies this Decision.  This completes the current proceedings before this Court concerning each of the pending applications.

Done at Newfane, Vermont, this 8th day of July 2011.

_____
Thomas S. Durkin, Environmental Judge

13
