Filed 05/28/25

VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 24-ENV-00049
Docket No. 24-ENV-00098

| Town of Berlin v. Harr, LLC<br><br>Harr, LLC Zoning Permit Application | **MERITS DECISION** |
| --- | --- |

These two coordinated matters relate to the damage sustained by the Berlin Mobile Home Park (the Park) in the July 2023 floods and the current efforts to repair and reconstruct the Park. In Docket No. 24-ENV-00049, the Town of Berlin (Town) has brought a zoning enforcement action against the Park's owner, Harr, LLC (Respondent) to enjoin Respondent from pouring new concrete slabs and initiating other construction/repairs on the Park property located at 135 Partridge Farm Road, Berlin, Vermont (the Property). In Docket No. 24-ENV-00098, Respondent appeals a decision of the Town Development Review Board (DRB) denying four separate zoning permit applications for limited repairs and construction activities at the Park. All four applications were denied on the grounds that Respondent failed to apply for and obtain a zoning permit within one-year of when the buildings were damaged or destroyed.

The Court held a coordinated merits hearing on both dockets on April 28, 2025. All parties appeared in person at the Costello Courthouse in Burlington, Vermont. The parties submitted post-trial legal briefing, which was complete on May 19, 2025.

In this matter, the Town is represented by Attorney Stephen Cusick. Respondent is represented by Attorney Stephen Craddock. The Agency of Natural Resources (ANR) has made a limited appearance through its Attorneys Kane Smart and Charles Peel.

### Findings of Fact

1. From July 9 through 11, 2023 communities across Vermont experienced catastrophic and unprecedented flooding.

2. Some of the worst flooding occurred along the Stevens Branch of the Winooski River, in which flood waters caused significant and irreparable property damage and upended people's livelihoods.

3. The Berlin Mobile Home Park (the Park) is located along the Stevens Branch.

4. The Park is located off Cedar Drive in Berlin, Vermont, which intersects with Partridge Farm Road and runs parallel to U.S. Route 302.

5. The Park is bordered by the Stevens Branch to the west and train tracks owned by Vermont Railway to the east.

6. The entire Park is located within the Regulatory Floodway of the Special Flood Hazard Area, as designated by Federal Emergency Management Agency (FEMA) flood hazard maps and the Vermont Natural Resources Atlas. Town Ex. 3.

7. The entire Park is located within the Flood Hazard Overlay District, as designated by the Berlin Land Use and Development Regulations (BLUDR).

8. On July 10, 2023, with flood waters rising, emergency personnel went to the Park and helped residents evacuate their homes.

9. Flood waters did not recede for several days.

10. After the flood, none of the Park's residents returned to their homes.

11. On July 24, 2023, the Town Zoning Administrator (ZA), Thomas Badowski, visited the Park with other emergency response personnel.

12. The purpose of the site visit was to make determinations regarding flood damage.

13. During the visit, the ZA focused on determining the water level marks on the outside of homes.

14. Many of the homes were elevated two or three feet off the ground.

15. For some homes, the ZA observed high water marks that were two or three feet high along the exterior walls.

16. The ZA also observed utilities located underneath homes, such as heating and cooling systems, which showed signs of water inundation.

17. As a result of the flood damage determinations, the State of Vermont issued condemnation letters for all of the manufactured homes within the Park. Town Ex. 4.

18. In a letter dated August 2, 2023, the Acting Town Administrator, Ture Nelson, notified Respondent that all repairs and replacement of structures at the Park must comply with the BLUDR. This could include Site Plan and Conditional Use permitting by the Town Development Review Board (DRB).

19. The letter did not mention a one-year deadline to apply for and obtain any necessary permit approvals.

20. On or about June 6, 2024, Respondent poured a concrete slab at the Park.

21. On June 11, 2024, the Town initiated enforcement proceedings with this Court, Docket 24-ENV-00049.

22. On July 12, 2024, this Court enjoined Respondent from undertaking any construction or development activities at the Park without prior Town review and approval. Town of Berlin v. Harr, LLC, No. 24-ENV-00049, slip op. at 8 (Vt. Super. Ct. Envtl. Div. July 12, 2024) (Walsh, J.).

23. On July 22, 2024, Respondent submitted three separate zoning applications to the Town for activities within the Park. Specifically, these three applications were to make repairs on the three stick-built structures which remain at the Park.

24. The first application was for the property at 175 Cedar Drive, identified as Lot 5 within the Park. Respondent described the proposed activities as follows: "repair existing structure to include: new flooring, sheetrock, kitchen cabinets, bathroom cabinets, painting, deck, and stairs." Town Ex. 10 at 4.

25. The second application was for the property at 243 Cedar Drive, identified as Lot 11 within the Park, and included the same description of activities as the first application.

26. The third application was for the property at 265 Cedar Drive, identified as Lot 13 within the Park, and included a similar description to the first two applications, except it did not seek approval for deck and stair repairs.

27. On August 6, 2024, Respondent applied to replace a concrete pad for a manufactured home at 40 Cedar Drive, identified as Lot 14.

28. In a decision dated August 9, 2024, the ZA denied all four applications for failure to obtain a zoning permit for reconstruction within one year of the structures being damaged or destroyed pursuant to BLUDR § 1207(D)(2)(c).

29. Respondent appealed the denial letter to the DRB, which upheld the denial. Respondent then timely appealed the DRB's decision to this Court.

## Discussion

The legal issues in this case present a particularly challenging regulatory framework. At its core, this case involves: (1) a mobile home park; (2) that is a preexisting nonconforming use; (3) located within the regulatory floodway of a designated flood hazard area. All three of these elements involve separate and distinct standards under State statutes and under the BLUDR. As discussed below, these different standards and provisions are not necessarily consistent with one another. Additionally, the

two coordinated matters impose different burdens of proof on the parties. We discuss these respective burdens below.

## I. Enforcement Action

In a zoning enforcement action, the Town carries the initial burden of proving the existence of a violation. See In re Transtar, LLC, No. 46-3-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 15, 2011) (Durkin, J.) (explaining that in a zoning enforcement action, the Town bears the burden of proof). The burden of proof consists of both a burden of production and a burden of persuasion. In re Katzenbach Act 250 Permit, No. 124-9-17 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Jan. 2, 2019) (Walsh, J.). The burden of production requires a party to produce sufficient evidence for this Court to make factual determinations, whereas the burden of persuasion requires a party to persuade the fact finder that certain facts are more likely true than not. Id.

Here, the Town has satisfied its burden of proving that it remains entitled to injunctive relief. As the Court previously explained:

> The BLUDR requires Town review and approval for any development within the Special Flood Hazard Area. BLUDR § 2202.F. The BLUDR defines "development" as "any human-made change to improved or unimproved real estate, including but not limited to buildings or other structures, mining, dredging, filling, grading, paving, excavation or drilling operations, or storage of equipment for materials." BLUDR § 2202.L(7) ("Development"). Based on this definition, the pouring of concrete and the installation of new homes or accessory structures would constitute development and therefore requires Town review and approval.

Harr, LLC, No. 24-ENV-00049. at 4 (July 12, 2024) (Walsh, J.).

The facts of this case have not changed since the Court granted a preliminary injunction. To the extent that Respondent seeks to commence any development activities at the Park, which is within the Special Flood Hazard Area, those activities require a permit. BLUDR § 2202.F. Because Respondent has not yet obtained any permits for the completed and/or requested work, the injunction must remain in place. This is true despite the Park's status as a preexisting nonconforming use.

Respondent argues that because the Park is a preexisting nonconforming mobile home park it is exempt from all regulation under BLUDR. This is not so. Respondent cites to 24 V.S.A. § 4412(7)(B), which provides, in relevant part, that "[w]here a mobile home park is a nonconforming use under local zoning regulations, its status regarding conformance or nonconformance shall apply to the parcel as a whole and not to any individual mobile home lot within the park." This provision

4

does not exempt nonconforming mobile home parks from zoning. Rather, this provision explains that individual lots within a mobile home park do not affect a park's nonconforming status. Nonconforming uses, generally, are still subject to municipal regulation. See 24 V.S.A. § 4412(7)(A) ("municipalities may regulate and prohibit expansion and undue perpetuation of nonconformities.").

Here, the BLUDR specifically regulates preexisting nonconforming uses within the Flood Hazard Overlay District. For example, an applicant must obtain conditional use approval to "substantially improve, repair after substantial damage, relocate, replace or enlarge a nonconforming structure within the special flood hazard area." BLUDR § 2202.I. If a nonconforming structure is substantially damaged or destroyed, the applicant may not substantially improve the structure if it is located within the floodway. BLUDR § 2202.I(2)(a). Accordingly, even if the Park is a preexisting nonconforming use, it is still subject to the relevant provisions of the BLUDR.[1]

Next, Respondent argues that even if the Park is subject to the BLUDR, the concrete pad is not subject to the Flood Hazard Overlay District regulations because it is at-grade development. In making this argument, Respondent points to BLUDR § 2202.H(7), which provides that "[t]he Town of Berlin prohibits encroachment (including fill) and above-grade development within the floodway…." Respondent interprets the negative implication of this provision to mean that any at- or below-grade development is allowed within the floodway. This interpretation is inconsistent with the entirety of § 2202.H and the more specific provisions regulating fill and other development within the floodway.

Section 2202.H is entitled "Development Standards" and requires that all development within the Special Flood Hazard Area conform to those standards. Subsection (7) deals specifically with above-grade development and prohibits all such development unless a registered professional engineer performs hydrologic and hydraulic analyses and concludes that the proposed development will not result in increased flood levels or increase the risk to surrounding properties. BLUDR § 2202.H(7)(a)–(b). Nowhere in this section, or anywhere within § 2202.H, are there permitting exemptions for below or at-grade development. Accordingly, even if the pouring of concrete is at-grade development, Respondent still must comply with the development standards in § 2202.H.

---

[1] The BLUDR is more permissive when it comes to non-substantial improvements to preexisting structures within the regulatory floodway. Such non-substantial improvements are a permitted use. A permitted use still requires a permit issued by the Town Zoning Administrator. The Park has not obtained any such permits.

The development standards for the Flood Hazard Overlay District are strict. The standards are even more exacting for development within the regulatory floodway. The BLUDR is clear and unambiguous in that <u>all development</u> within the Special Flood Hazard Area, with very limited exceptions, requires a permit. BLUDR § 2202.F. Accordingly, Respondent must obtain the necessary permit approvals prior to commencing any development within the Park. Because Respondent does not currently have any permits, our injunction remains in effect.

## II. Permit Applications

In a zoning permit appeal, the permit applicant carries the burden of proving that the application complies with the zoning bylaws. <u>In re Ranney Dairy Farm, LLC Major Subdivision Appeal</u>, 2024 VT 66, ¶ 12. Once the applicant fulfills its initial burdens, the burden of persuasion shifts to the party opposing the project. <u>Burton Corp. Site Work Approval</u>, No. 15-2-20 Vtec, slip op. at 9 (Vt Super. Ct. Envtl. Div. June 25, 2021) (Durkin, J.) (citation omitted).

In a permit appeal, this Court's jurisdiction is limited by the appellant's Statement of Questions. <u>In re Conlon CU Permit</u>, No. 2-1-12 Vtec. slip op. at 1 (Vt. Super. Ct. Envtl. Div. Aug. 30, 2012) (Durkin, J.). Respondent has filed a six-question Statement of Questions. It asks:

> 1. Was it proper for the Town of Berlin through its Zoning Administrator and Development Review Board to require a permit for replacement of a manufactured home under BLUDR 2202.G when pursuant to 10 V.S.A. § 6204(e), which provides that "where a mobile home park is a nonconforming use under local zoning regulations, it[s] status regarding conformance or nonconformance shall apply to the parcel as a whole and not to any individual mobile home lot within the park. The vacancy of any individual mobile home lot shall not be considered a discontinuance or abandonment of the nonconforming use."
> 2. Was it proper for the Town of Berlin through its Zoning Administrator and Development Review Board to require a permit to repair a damaged structure when the repairs to said structure were not substantial as defined in BLUDR 5201.S(25).
> 3. Was it proper for the Town of Berlin through its Zoning Administrator and Development Review Board to apply the requirements of BLUDR § 1207(D) that the "property owner" must obtain a zoning permit to replace a damaged structure to applicant, the owner of the MHP where aid mobile home had been located, when the owner of the mobile home sold it to the State of Vermont in October 2023 and the Applicant never owned the mobile home it sought to replace?

6

4. Was it proper for the Town of Berlin through its Zoning Administrator and Development Review Board to apply the requirements of BLUDR § 1207.D(2)(c) that a permit request to replace a nonconforming structure that was damaged or destroyed must be filed within one year of the structure being damaged or destroyed when this requirement is in direct contravention of 10 V.S.A. § 6204(e) as quoted above?

5. Since the BLUDR do not specifically define the term property or property owner and BLUDR 5001.A states that the words used in the regulations have their normal dictionary meaning unless they are specifically defined in the regulations, is it proper for the Town of Berlin through its Zoning Administrator and Development Review Board to use "property owner" to define both a land owner and the owner of personal property in regulations pertaining to land use and development?

6. Is the Berlin Development Review Board correct when in paragraph 2 of its Findings and Facts dated 9/30/24, it claims that the manufactured home removed after the property sustained flood damage on July 20, 2023, was a nonconforming use?

Respondent's Statement of Questions (filed on November 12, 2024).[2]

These Questions, as presented, misconstrue the standard of review on appeal. With limited exceptions, not relevant here, we review appeals de novo. 10 V.S.A. § 8504(h). Accordingly, we hear the case "as though no action whatever has been held prior thereto." Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989). Therefore, we generally do not consider the underlying decision of a town zoning administrator or DRB that is on appeal. Rather, "we review the application anew as to the specific issues raised in the statement of questions." In re Whiteyville Props. LLC, No. 179-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.). Thus, we interpret Respondent's Questions as asking, generally, whether the permit applications comply with the BLUDR.

When interpreting a zoning ordinance, our goal is to effectuate the intent of the drafters. In re Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 20, 206 Vt. 302. In doing so, we construe an ordinance's words according to their plain and ordinary meaning, giving effect to the whole and every

---

[2] As explained above, any development activities within the Special Flood Hazard Area require a permit regardless of the Park's nonconforming status. This includes any repairs to a damaged structure regardless of whether those repairs were non-substantial. Accordingly, we answer Respondent's Questions 1 and 2 in the Town's favor. Additionally, Question 6 confusingly asks about a specific finding in the DRB's decision and an individual home's nonconforming status. We are not sure how this Question relates to the four applications before the Court, and therefore we decline to answer Question 6 at this time.

part of the ordinance. Id. When there are two conflicting provisions in an ordinance, the specific provision is held as an exception to the general provision. In re Pederzani Administrative Appeal, 2024 VT 82, ¶ 12. Lastly, the zoning authority of a municipality is "delegated from the state, and may be exercised only in accordance with that delegation, subject to any terms and conditions imposed by the state." State v. Sanguinetti, 141 Vt. 349, 343 (1982). If there is a conflict between state and local laws, those laws should be construed to avoid such conflict and to effectuate the purpose of the superior state law. See In re Patch, 140 Vt. 158, 177 (1981) (explaining the doctrine of conflict preemption).

The sole basis for the ZA's denial of Respondent's applications was that Respondent failed to obtain permits within one year of the July 2023 flood event. The denial cites to BLUDR § 1207.D(2)(c), which provides that for a nonconforming damaged or destroyed structure, the property owner[3] must "obtain a zoning permit for the reconstruction within one year of the structure being damaged or destroyed." BLUDR § 1207.D(2)(c). We focus our analysis on the relevancy of this provision, and ultimately conclude that this provision is inapplicable to Respondent's applications.

Most notably, we conclude that § 1207.D is plainly inapplicable here considering the more specific directive in § 1207.A. This section says to "[s]ee Section 2202 if the damaged or destroyed structure is located within the Flood Hazard Overlay District." Section 2202 contains specific standards for development within the Special Flood Hazard Area, including provisions dealing with nonconforming uses. See BLUDR § 2202.I(2)(a) ("If a nonconforming structure is substantially damaged or destroyed, the applicant must not substantially improve the structure if it is located within the floodway…"). There is no one-year limitation provision in Section 2202 nor is there a reference to § 1207.D(2)(c).

Additionally, the Town's reading of § 1207.D, as applied to the Park, conflicts with 24 V.S.A. § 4412(7)(B), which deals with nonconforming mobile home parks. As explained above, a mobile home park's nonconforming status is determined by the park as a whole and is not based on individual lots or homes. 24 V.S.A. § 4412(7)(B). Section 1207.D, by its plain language, only deals with damaged or destroyed structures. Respondent's four permit applications correspond to four specific lots within the Park, not a blanket application related to the Park as a whole. Accordingly, § 1207.D cannot be applied to these four applications to extinguish the Park's nonconforming status, as doing so would

---

[3] Respondent argues that it is not the "property owner" and therefore is not subject to BLUDR § 1207.D(2)(c). Respondent is, however, the owner of the Park, and is now seeking to repair and redevelop the Park. Because we decline to apply BLUDR § 1207.D(2)(c) on other grounds, we need not further explore this confusing legal theory. Thus, we decline to answer Respondent's Questions 3 and 5.

8

directly conflict with the State statute. In reaching this conclusion, we answer Respondent's Question 4 in favor of Respondent.

Lastly, § 1207.D(2)(c) narrowly applies to reconstruction activities. Section 1207.D first provides that a property owner must obtain a zoning permit to "repair, reconstruct or replace" a damaged or destroyed structure. Later, Section 1207.D(2)(c) requires a property owner to obtain a zoning permit for the "reconstruction" of a damaged or destroyed structure within one year. The Town relies on this one-year provision to deny Respondent's permit applications, but that provision applies only to reconstruction activities. Respondent's first three applications are for repairs, not reconstruction. Respondent's fourth application is to "replace" a concrete pad. Respondent has not applied to reconstruct any structures. Because these terms are used separately within Section 1207.D, Section 1207.D(2)(c) is clearly inapplicable to these four applications. See State v. Morrill, 2025 VT 19, ¶ 10 (explaining that when a legislative body includes a particular provision in one section and excludes it from another, it is reasonable to assume the omission was intentional.).

The Town cites to 24 V.S.A. § 4412(7)(A) as authorizing municipalities to phase out nonconforming uses. Among other things, the statute allows a town to "[s]pecify a time period that shall constitute abandonment or discontinuance of that nonconforming use…" and to "[s]pecify the extent to which… a nonconformity may be maintained or repaired." 24 V.S.A. § 4412(7)(A)(i)–(ii). In citing to these provisions, the Town asks the Court to determine that the Park is no longer a nonconforming use. We agree with the Town that it has the broad authority to regulate and attempt to phase out nonconformities. Section 1207.D(2)(c), however, is not the proper mechanism to achieve those goals with respect to the Park. Section 1207.A specifically states that properties within the Flood Hazard Overlay District are subject to BLUDR § 2202. Additionally, § 1207.D only applies to individual structures. It cannot be used to extinguish the Park's nonconforming status as a whole according to state law. Lastly, § 1207.D(2)(c) only applies to reconstruction activities, which Respondent has not applied for. For all these reasons, we decline to apply § 1207.D(2)(c) to Respondent's applications, and therefore we consider them as timely.

The Town has not determined whether Respondent's applications comply with the flood hazard regulations on their merits. This is because the Town's position is that any redevelopment on the Property is prohibited simply because of the one-year provision in Section 1207.D and because the Park lost its nonconforming status.

Even assuming *arguendo* that the Park did lose its nonconforming status, there is still the possibility that Respondent could apply for activities which are allowed under the BLUDR. If a

9

nonconforming use is abandoned or discontinued, the effect is that any future development would be subject to the current version of a town's zoning regulations. As the Vermont Supreme Court wrote in Chioffi v. City of Winooski, when a nonconformity was not reconstructed after a fire within the relevant one-year period, the result was that the preexisting use status was lost and the applicant had "to comply fully with the new ordinance provisions." 165 Vt. 37, 38 (1996). Even though the building lost its nonconforming status, the City still reviewed the application under the current zoning regulations. Here, the Town has not yet considered whether Respondent's four applications could otherwise comply with the BLUDR.

Typically, we would expect the permit applicant to demonstrate compliance with any applicable regulatory provisions in our trial de novo. Because the Town never reached these issues below, however, the appropriate remedy is to remand the applications back to the Town to make such determinations in the first instance. In re Maple Tree Place, 156 Vt. 494, 499–500 (1991) (discussing a court's inherent authority to remand an application for full consideration of the issues). On remand, Respondent will have the burden of demonstrating compliance before the Town and may supplement its application materials as may be necessary.

Because we conclude that the sole basis for the Town's denial was improper, we hereby **REMAND** the applications back to the Town to conduct the appropriate review over the applications. In doing so, we note that repairs to, and replacement of, existing structures are allowed in the Flood Hazard Overlay District. On remand, the Town should determine whether the first three applications involve substantial or non-substantial improvements to existing structures.[4] From there, the Town should determine whether the four applications comply with the strict development standards of the Flood Hazard Overlay District.

### Conclusion

In Docket No. 24-ENV-00049, we conclude that the Town remains entitled to injunctive relief. Respondent shall not commence any development activities on the Property until it acquires any necessary Town approvals. A Judgement Order accompanies this Decision.

---

[4] At trial, the Town explained its process for assessing damage. The Court is not convinced that the Town's initial damage assessments were precise or reliable. For example, the Town relied, in part, on a report allegedly prepared by Ned Swanberg, the Vermont Flood Hazard Mapping Coordinator. Mr. Swanburg's trial testimony, however, warrants little weight. His assessments were made using a "substantial damage estimation tool" but he could not explain how the tool worked or why it generated a report which contained clear errors. He also couldn't recall basic facts about who prepared the report. In contrast, Randy Rouleau, the Park's agent, credibly testified that the actual and estimated cost of repairs was less than half of the total market value of the three stick-built homes. We flag this as an evidentiary issue which the Town should strongly consider in reviewing the applications on their merits.

In Docket No. 24-ENV-00098, we conclude that BLUDR § 1207.D(2)(c) is not applicable, and we decline to extinguish the Park's nonconforming status based on that provision. Accordingly, we **REMAND** Respondent's four permit applications to the Town to review those applications for compliance with the Flood Hazard Overlay District regulations and any other applicable provisions in the BLUDR.

Electronically signed May 28, 2025 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division